

)
)



L-596    **STATE OF HAWAII**
**OFFICE OF ASSISTANT REGISTRAR**
**RECORDED**
AUG 03, 2010        02:00 PM
Doc No(s) 3985610
on Cert(s) 775,009

/s/ NICKI ANN THOMPSON
ASSISTANT REGISTRAR

93    1/1    Z10

I hereby certify that this is
a true copy from the records
of the Bureau of Conveyances,

Acting Registrar of Conveyances
Assistant Registrar, Land Court
State of Hawaii

)
)
)
)
LAND COURT SYSTEM        )        REGULAR SYSTEM

Return by:    Mail  (    )    Pickup  ( X )

TO:  LEU & OKUDA
     Attorneys At Law
     The Merchant House
     222 Merchant Street, Main Floor
     Honolulu, Hawaii 96813
     Tel: (808) 538-1921

TMK: (1) 9-1-008-076                          Total pages: 93

TCT: 775,009

MORTGAGEE'S AFFIDAVIT OF FORECLOSURE UNDER POWER OF SALE



**EXHIBIT "E"**

## MORTGAGEE'S AFFIDAVIT OF FORECLOSURE UNDER POWER OF SALE

STATE OF HAWAII               )
                                  :   SS.
CITY & COUNTY OF HONOLULU   )

LESTER K.M. LEU ("Affiant"), being first duly sworn upon oath, deposes and says as follows:

1.    Affiant is an attorney licensed to practice law in the State of Hawaii.

2.    Affiant represents, and was at all relevant times herein authorized to act on behalf of U.S. Bank National Association, as Trustee under Securitization Servicing Agreement dated as of December 1, 2005, Structured Asset Securities Corporation Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates, Series 2005-11 ("Mortgagee") in the matters set forth herein. Affiant makes this Affidavit based on personal knowledge and belief, and is competent to testify to the facts stated herein on the documents, papers or things kept in the course of the regularly conducted business activity of the Mortgagee or your Affiant.

3.    The real property that is the subject of the private power of sale (non-judicial foreclosure) described herein is located at 91-743 Ihipehu Street, Ewa Beach, HI 96706, T.M.K. No. (1) 9-1-008-076, and is more particularly described in Exhibit "A" attached hereto ("Property").

4. The Mortgagee is the holder of that certain Promissory Note and Mortgage dated October 10, 2005 ("Mortgage"), filed in the Office of the Assistant Registrar of the Land Court of the State of Hawaii as Document No. 3340803, as assigned to U.S. Bank National Association, as Trustee under Securitization Servicing Agreement dated as of December 1, 2005, Structured Asset Securities Corporation Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates, Series 2005-11, by assignment dated March 10, 2010, recorded as aforesaid as Document no. 3948878. True and correct copies of the foregoing documents are attached as Exhibits "1" (Promissory Note), "2" ("Mortgage") and "3" ("Assignment of Mortgage").

5. Affiant certifies that in compliance with and pursuant to Hawaii Revised Statutes 667-5 through 667-10 and that certain Note and Mortgage, Mortgagee or its representative, or Affiant, or her representative did the following:

a. Sent a notice of default to the borrower(s), mortgagor(s) and guarantor(s) on April 15, 2009 by certified mail, return receipt requested. The notice of default was sent in compliance with the requirements set forth in the Mortgage. A true and correct copy of the notice and the return receipt is attached hereto as Exhibit "4".

b. Served a Notice of Mortgagee's Non-judicial Foreclosure Under Power of Sale ("Notice") in the form attached

hereto as Exhibit "5" by certified mail, return receipt requested and by personal service, to the borrower(s), mortgagor(s), guarantor(s), the Department of Taxation of the State of Hawaii, the Director of Finance of the City and County of Honolulu, and all other parties who have recorded encumbrances, liens and/or other claims against the Property or who have requested notice under Hawaii Revised Statutes Section 667-6. A list of these parties is attached hereto as Exhibit "6". True and correct copies of the certificates of mailing and the return receipts signed by the addressees or the original returns of service acknowledged by the recipients are attached hereto as Exhibit "7".

      c.    Sent a copy of the Notice by U.S. Mail, postage prepaid, to the borrower(s), mortgagor(s), and guarantor(s) addressed to their last known address.

      d.    Caused a copy of the Notice and the Rescheduled Notice to be posted on the Property for a period of not less than twenty-one (21) days before the date of the public auction sale, as evidenced by the original <u>Affidavit of Posting</u> attached as Exhibit "8".

      e.    Caused the publication in the Honolulu Star Bulletin of an advertisement setting forth a summary description of the Property, the Mortgagee's intention to foreclose pursuant to the power of sale in the Mortgage, and the date, time, place

3

at which, and the conditions under which the public auction sale was to be held. The notice was published once in each of three successive weeks commencing on March 26, 2010, with the last publication having been not less than fourteen (14) days before the date of the public auction sale, as evidenced by the original Affidavit of Publication attached hereto as Exhibit "9".

f. Announced the postponement of the Auction on May 6, 2010, at the time and place set forth in the Notice.

g. Served a Rescheduled Notice of Mortgagee's Non-judicial Foreclosure Under Power of Sale ("Rescheduled Notice") in the form attached hereto as Exhibit "10" by certified mail, return receipt requested, to the borrower(s), mortgagor(s), guarantor(s), the Department of Taxation of the State of Hawaii, the Director of Finance of the City and County of Honolulu, and all other parties who have recorded encumbrances, liens and/or other claims against the Property or who have requested notice under Hawaii Revised Statutes Section 667-6. A list of these parties is attached hereto as Exhibit "11". True and correct copies of the certificates of mailing and the return receipts signed by the addressees or the original returns of service acknowledged by the recipients are attached hereto as Exhibit "12".

4

h.    Caused a copy of the Rescheduled Notice to be posted on the Property as evidenced by the original Affidavit of Posting attached as Exhibit "13".

i.    Caused the publication of the Rescheduled Notice in the Honolulu Star-Advertiser which set forth a summary description of the Property, the Mortgagee's intention to foreclose pursuant to the power of sale in the Mortgage, and the date, time, place at which, and the conditions under which the public auction sale was to be held.  The Rescheduled Notice was published once on June 14, 2010, as evidenced by the original Affidavit of Publication attached hereto as Exhibit "14".

j.    Conducted the public auction sale on July 8, 2010, at the date, time, and place set forth in the Notice and under the conditions stated therein, and Affiant, or her representative, declared the Property sold to U.S. Bank National Association, as Trustee under Securitization Servicing Agreement dated as of December 1, 2005, Structured Asset Securities Corporation Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates, Series 2005-11, and / or its nominee, for $423,993.62, which was the highest bid at said sale.

6.    At the time of the sale, the default remained uncured.

7.    In compliance with Hawaii Revised Statutes, Chapter 667, Mortgagee will do the following:

a.   Cause a conveyance of the Property by way of a Mortgagee's Quitclaim Deed to be delivered to said purchaser, or the purchaser's nominee. The closing date of the transaction is the date of recordation of the deed.

b.   Cause the distribution of the excess proceeds, if any to other lienholders or persons having an interest in the Property of record, if any, in order of priority, with any remainder being distributed to the borrower(s).

8.   Affiant certifies that none of the borrower(s) or mortgagor(s) is in the military service as evidenced by a true and correct copy of the Department of Defense Manpower Data Center report(s) dated April 29, 2010, and July 8, 2010, attached hereto as Exhibit "15".

9.   In consideration of the conveyance of the Property, the Mortgagee hereby waives, releases and relinquishes its right to seek or to collect any deficiency or judgment against the borrower(s) and guarantor(s), and confirms that the debt secured by the Property is released and satisfied in its entirety.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Lester K.M. Leu
Attorney for Mortgagee

Subscribed and sworn to before me

This _3_ day of _AUGUST_ , 2010.

Doc Date: __NO DATE__ # Pages: __90__

MELISSA MARUSHIGE First Circuit

Doc Description: MORTGAGEE'S AFFIDAVIT

OF FORECLOSURE UNDER POWER OF SALE

_____

My commission expires 10/02/2013.

7

Exhibit "A"

## EXHIBIT "ONE"

THE LAND REFERRED TO IN THIS REPORT IS SITUATED IN THE COUNTY OF HONOLULU, STATE OF HAWAII, AND IS DESCRIBED AS FOLLOWS:

All of that certain parcel of land situate at Ewa District of Ewa Beach, City and County of Honolulu, State of Hawaii, described as follows:

Lot 1386, area 5,116 square feet, more or less, as shown on Map 158, filed in the Office of the Assistant Registrar of the Land Court of the State of Hawaii with Land Court Application No. 242 of The Dowsett Company, Limited.

Being all of the property conveyed by the following:

Deed

| | |
|---|---|
| Grantor: | Jerry Lynn Cenquigrana and Mila Roja Cenquigranan, husband and wife |
| Grantee: | Heejoon Chung, unmarried as a tenant in severalty |
| Dated: | October 4, 2005 |
| Recorded: | October 14, 2005 in the Office of the Assistant Registrar of the Land Court of the State of Hawaii, as Document No. 3340802. |

Being all of the property described in and covered by Transfer Certificate of Title No. 775,009.

TMK: (1) 9-1-008-076

Exhibit "1"

## BALLOON NOTE
### (Adjustable Rate)
### (LIBOR Six-Month Index (As Published In *The Wall Street Journal*)-Rate Caps)

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN YOUR INTEREST RATE AND YOUR MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT YOUR INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE YOU MUST PAY.

| October 10, 2005 | IRVINE | CALIFORNIA |
|---|---|---|
| [Date] | [City] | [State] |

### 91-743 IHIPEHU ST, EWA BEACH, HI 96706
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 424,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is  BNC MORTGAGE, INC., A DELAWARE CORPORATION . I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of  6.150 %.  The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on  December 1, 2005 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on November 1, 2035 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  OOMC, Attn:Payment Processing, P.O. Box 44042, Jacksonville, FL. 32231-4042 or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $  2,377.40 . This amount may change.

MULTISTATE BALLOON ADJUSTABLE RATE NOTE LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*)—     (V/2005)
BNC Form
EBN

Page 1 of 4

Borrower Initials HC ____ ____ ____ ____ ____

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of   November, 2008                       , and on that day every  6th    month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding  Six And 250/1000            percentage points (  6.250       %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment at my new interest rate. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than  9.150 % or less than  6.150 % . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one  percentage points(s) ( 1.000 %) from the rate of interest I have been paying for the preceding   6   months. My interest rate will never be greater than  13.150 %. My interest rate will never be less than 6.150 %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY  ** See attached Prepayment Rider.

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no

changes in the due dates of my monthly payments unless the Note Holder agrees in writing to these changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of        25   calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 6 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

MULTISTATE BALLOON ADJUSTABLE RATE NOTE-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*)      (11/2001)
BNC Form

Page 3 of 4
Borrower Initials    HC    ____  ____  ____  ____

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)                    _____ (Seal)
HEEJOON CHUNG          -Borrower                                          -Borrower


_____ (Seal)                    _____ (Seal)
                      -Borrower                                          -Borrower


_____ (Seal)                    _____ (Seal)
                      -Borrower                                          -Borrower

*[Sign Original Only]*

Exhibit "2"



STATE OF HAWAII
L-150 OFFICE OF ASSISTANT REGISTRAR
RECORDED
OCT 14, 2005 08:01 AM
Doc No(s) 3340803
on Cert(s) 775,009



/s/ CARL T. WATANABE
ASSISTANT REGISTRAR

21    2/3    Z4

After Recordation Return By:    Mail ☐    Pickup ☒    To:

BNC MORTGAGE, INC.
P.O. BOX 19656
IRVINE, CA 92623-9656

This document is
contains _____ pages

———————[Space Above This Line For Recording Data]———————

# MORTGAGE

MIN 100122200002094495

Loan No.: HAW008246

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated October 10, 2005 , together with all Riders to this document.

(B) "Borrower" is HEEJOON CHUNG, UNMARRIED.

Borrower is the mortgagor under this Security Instrument.

HAWAII-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS    Form 3012 1/01

-6A(HI) (0008).02
Page 1 of 15    Initials: _____

VMP MORTGAGE FORMS - (800)521-7291

Description: Honolulu,HI Land Court 3340803 Page: 1 of 21
Order: 09007707 Comment:

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) "Lender" is BNC MORTGAGE, INC., A DELAWARE CORPORATION

Lender is a corporation
organized and existing under the laws of Delaware
Lender's address is P.O. BOX 19656, IRVINE, CA 92623-9656

(E) "Note" means the promissory note signed by Borrower and dated October 10, 2005
The Note states that Borrower owes Lender four hundred twenty-four thousand and 00/100                                                                                             Dollars
(U.S. $424,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than November 1, 2035.
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [x] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [x] Other(s) [specify] |
| | | Prepayment Rider |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the

| COUNTY | of | HONOLULU, HAWAII |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction]: |

LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HERETO AS EXHIBIT A.

Parcel ID Number:
91-743 IHIPEHU ST
EWA BEACH
("Property Address"):

which currently has the address of
[Street]
[City], Hawaii 96706      [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

-6A(HI) (0005).02          Page 3 of 15          Initials: _____          Form 3012 1/01

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community

Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith

by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law

Initials: _____

requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or

Description: Honolulu,HI Land Court 3340803 Page: 7 of 21
Order: 09007707 Comment:

regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement

provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually

Description: Honolulu,HI Land Court 3340803 Page: 10 of 21
Order: 09007707 Comment:

received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

Initials: _HC_

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any

Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give Borrower notice of sale in the manner provided in Section 15. Lender shall publish a notice of sale and shall sell the Property at the time and place and under the terms specified in the notice of sale. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waivers.** Borrower relinquishes all right of dower and curtesy in the Property.

Description: Honolulu,HI Land Court 3340803 Page: 13 of 21
Order: 09007707 Comment:

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____ (Seal)
HEEJOON CHUNG -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

Description: Honolulu,HI Land Court 3340803 Page: 14 of 21
Order: 09007707 Comment:

STATE OF HAWAII,   City and County of Honolulu          ss:

On this     10th       day of   October   2005                        , before me
personally appeared  HEEJOON CHUNG

to me known to be the person described in and who executed the foregoing instrument and acknowledged
that he/she/they executed the same as his/her/their free act and deed.

My Commission Expires:

Notary Public, State of Hawaii

Myrna P. Villegas
NOTARY PUBLIC, FIRST JUDICIAL CIRCUIT
Notary Name     COMMISSION EXPIRES May 30, 2007

-6A(HI) (0005).02                    Page 15 of 15                Initials: ___          Form 3012   1/01

**Exhibit "A"**

ALL OF THAT CERTAIN PARCEL OF LAND SITUATE AT EWA DISTRICT OF EWA BEACH, CITY AND COUNTY OF HONOLULU, STATE OF HAWAII, DESCRIBED AS FOLLOWS:

LOT 1386, AREA 5,116 SQUARE FEET, MORE OR LESS, AS SHOWN ON MAP 158 FILED WITH LAND COURT APPLICATION NO. 242 OF THE DOWSETT COMPANY, LIMITED.

BEING ALL OF THE PREMISES DESCRIBED IN AND COVERED BY TRANSFER CERTIFICATE OF TITLE NO. _____ AND CONVEYED BY DEED RECORDED CONCURRENTLY HEREWITH.

**Subject to the following:**

**Any and all liens and/or encumbrances of record.**

### ADJUSTABLE RATE BALLOON RIDER
#### (LIBOR Six-Month Index (As Published In *The Wall Street Journal*)-Rate Caps)

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

THIS ADJUSTABLE RATE RIDER is made this      10th day of October, 2005 , , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
BNC MORTGAGE, INC., A DELAWARE CORPORATION
("Lender") of the same date and covering the property described in the Security Instrument and located at:

### 91-743 IHIPEHU ST, EWA BEACH, HI 96706
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

### A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of      6.150      %. The Note provides for changes in the interest rate and the monthly payments, as follows:

### 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
**(A) Change Dates**
The interest rate I will pay may change on the first day of November, 2008 , and on that day every   6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

MULTISTATE ADJUSTABLE RATE BALLOON RIDER-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*)
BNC Form

Page 1 of 3

Borrower Initials

BAC08.01
04/17/01

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Six And 250/1000** percentage points ( **6.250** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment at my new interest rate. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **9.150** % or less than **6.150** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND 00/100 percentage point(s) ( 1.00 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than **13.150** %. My interest rate will never be less than **6.150** %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE ADJUSTABLE RATE BALLOON RIDER-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*)
BNC Form
Page 2 of 3

Borrower Initials  *bC*

BADdd
0427U5

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
HEEJOON CHUNG            -Borrower                                -Borrower


_____ (Seal)          _____ (Seal)
                        -Borrower                                -Borrower


_____ (Seal)          _____ (Seal)
                        -Borrower                                -Borrower

MULTISTATE ADJUSTABLE RATE BALLOON RIDER-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*)-
BNC Form                                    Page 3 of 3

                        Borrower Initials  HC _____ _____ _____ _____ _____ _____

BADRU3
6/03MJ

Description: Honolulu,HI Land Court 3340803 Page: 19 of 21
Order: 09007707 Comment:

RECORDING REQUESTED BY, AND
WHEN RECORDED MAIL TO:

BNC MORTGAGE, INC.
P.O. BOX 19656
IRVINE, CALIFORNIA 92623-9656

(Space above this line for Recorder's use)

# PREPAYMENT CHARGE RIDER
## (BALLOON ADJUSTABLE RATE)

Loan No.:        HAW008246
Application No.: HAW008246

THIS PREPAYMENT RIDER is made this        **10th day of October, 2005,**
, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Balloon Note (the "Note") to
**BNC MORTGAGE, INC., A DELAWARE CORPORATION**

("Lender") of the same date and covering the property described in the Security Instrument and located at:
**91-743 IHIPEHU ST, EWA BEACH, HI 96706**

To the extent that the provisions of this Prepayment Rider (the "Rider") are inconsistent with the provisions of the Security Instrument and/or the Note, the provisions of this Prepayment Rider shall prevail over and shall supersede any such inconsistent provisions of the Security Instrument and/or the Note.

For value received, the receipt and sufficiency of which are hereby acknowledged, Section 5 of the Note is amended to read in its entirety as follows:

### "5. BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

If within **thirty-six  ( 36 )** months from the date of execution of the Security Instrument, I make a full Prepayment or partial Prepayment(s), I will at the same time pay to the Note Holder a Prepayment charge equal to six (6) months' advance interest on the amount of the Prepayment that, when added to all other amounts prepaid during the 12-month period immediately preceding the date of the Prepayment, exceeds twenty percent (20%) of the original Principal amount of this Note."

Page 1 of 2

By signing below, I (We) accept and agree to the terms and covenants contained in this Prepayment Charge Rider.

_____
Borrower
**HEEJOON CHUNG**

_____
Borrower

_____
Borrower

_____
Borrower

_____
Borrower

_____
Borrower

———————————— (Space below this line for Acknowledgment) ————————————

Page 2 of 2

Description: Honolulu,HI Land Court 3340803 Page: 21 of 21
Order: 09007707 Comment:

Exhibit "3"

OFFICE OF THE
ASSISTANT REGISTRAR OF THE LAND COURT
STATE OF HAWAII
(Bureau of Conveyances)

The original of this document was
recorded as follows:

DOCUMENT NO.
Doc 3948878
DATE
CTN 778,009
MAR 19, 2010 11:00 AM

LAND COURT SYSTEM | REGULAR SYSTEM
---|---

Return by:     Mail  (   )     Pickup  ( X )

TO:   LEU & OKUDA
      Attorneys At Law
      The Merchant House
      222 Merchant Street, Main Floor
      Honolulu, Hawaii 96813
      Tel: (808) 538-1921          This document consists of 3 pages

082460S021

TMK: (1) 9-1-008-076
MIN: 100122200002094495

## ASSIGNMENT OF MORTGAGE AND NOTE

This Assignment, made this **10** day of **March**,

2010, by and between Mortgage Electronic Registration Systems,

Inc., solely as nominee for BNC Mortgage, Inc., a Delaware

corporation, its successors and assigns, hereinafter called the

"Assignor", and U.S. Bank National Association, as Trustee under

Securitization Servicing Agreement dated as of December 1, 2005,

Structured Asset Investment Loan Trust Mortgage Pass-Through

Certificates, Series 2005-11, whose principal place of business

and post office address is c/o 4837 Watt Ave., North Highlands,

J:\FORECLOS\Ken-Jud\homeq-chung\asn-mtg land court.rtf (ck)

CA 95660, hereinafter called the "Assignee".

W I T N E S S E T H:

In consideration of the sum of ONE DOLLAR ($1.00) and other valuable consideration paid by the Assignee, the receipt of which is hereby acknowledged, the Assignor does hereby, without recourse, sell, assign, transfer, set over and deliver unto the Assignee, its successors and assigns, the mortgage and note hereinafter described, together with all the right, title and interest of the Assignor, in and to the property described in said mortgage, to wit:

> That certain mortgage made by Heejoon Chung, as Mortgagor, to Mortgage Electronic Registration Systems, Inc., solely as nominee for BNC Mortgage, Inc., a Delaware corporation, as Mortgagee, dated October 10, 2005, and recorded in the Office of the Assistant Registrar of the Land Court of the State of Hawaii as Doc no.: 3340803, which affects TCT No. 775,009, and that certain promissory note referenced therein.

TO HAVE AND TO HOLD the same unto the Assignee, its successors and assigns forever.

IN WITNESS WHEREOF the said Assignor has executed these presents on the day and year first above written.

Mortgage Electronic
Registration Systems, Inc.,
solely as nominee for BNC
Mortgage, Inc., its
successors and assigns

By _____
   Its ____**Joyce Nelson**____
      **Assistant Secretary**

By _____
   Its ____**Lori Rakoncza**____
      **Assistant Secretary**


STATE OF _____**California**_____ )
                    ) SS.
COUNTY OF ____**Sacramento**____ )

    On this __*10*__ day of ___*March*___, 2010, before me

personally appeared ____**Joyce Nelson**__ and ___**Lori Rakoncza**___to be

~~personally known~~ who being by me duly sworn, did say that they

are the ___**Assistant Secretary**___ and ___**Assistant Secretary**___, respectively,

of Mortgage Electronic Registration Systems, Inc., solely as

nominee for BNC Mortgage, Inc., its successors and assigns and

that said instrument was signed on behalf of said corporation by

authority of its Board of Directors, and the said officers

acknowledged said instrument to be the free act and deed of said

corporation.

```
D. PLATTE
COMM. #1652437
NOTARY PUBLIC-CALIFORNIA
SACRAMENTO COUNTY
COMM. EXP. MAR 18, 2010
```

Notary Public, State of **California**
       **D. Platte**
My commission expires:

Exhibit "4"

HomEq Servicing
PO Box 9044
Temecula, CA 92589-9044



2218162306

PRESORT
First-Class Mail
U.S. Postage and
Fees Paid
WSO

*Send Payments to:*
HomEq Servicing
PO Box 79230
City Of Industry, CA 91716-9230

*Send Correspondence to:*
HomEq Servicing
Attn: Account Research
Mail Code CA3345
PO Box 13716
Sacramento, CA 95853

HEEJOON CHUNG
91-743 IHIPEHU ST
EWA BEACH, HI 96706-2405

20090417-48
REG



1162-v7

# ·HomEq Servicing

**April 15, 2009**
DF780


**HEEJOON CHUNG**

**91-743 IHIPEHU ST**
**EWA BEACH, HI 96706**

**Property Address:**
**91-743 IHIPEHU ST**
**EWA BEACH, HI 96706**


Dear HEEJOON CHUNG:

This letter is in reference to the above-referenced account (the "Account"), serviced by HomEq Servicing ("HomEq"), on behalf of U.S. Bank National Association as Trustee for SAIL 2005-11 Trust the current creditor of the Account:

| | |
|---|---|
| Name of current creditor/owner: | U.S. Bank National Association as Trustee for SAIL 2005-11 Trust |
| Time and place of the creation of the debt: | 10/13/2005 |
| | EWA BEACH, HI |
| Tax Map Parcel Number | 910080760000 |
| Merchandise, services or other things of value: | Mortgage/Deed of Trust |

You are hereby provided with notice that you are in default under the terms and conditions of your Note/Retail Installment Sale Contract and Mortgage/Deed of Trust secured by the above-referenced property (the "Property") for failure to pay the required installments when due. If your Account is not brought current within sixty-five (65) days of the date of this letter, which is 06/19/2009, HomEq will, without further demand, accelerate the maturity date of the Account and declare the total balance immediately due and payable. As a consequence, HomEq may refer your Account to an attorney for foreclosure and all fees associated with foreclosure and property preservation may be added to the total amount required to bring the Account current. In order to avoid further action, your full and timely payment in an amount sufficient to bring the Account current must be received by HomEq via **certified funds, cashier's check or money order(s)** on or before 06/19/2009. Your remittance must be made payable and mailed to HomEq Servicing at P.O. Box 79230 City of Industry, CA 91716-9230.

As of the date of this letter, the amount required to bring the Account current and avoid foreclosure is the sum of payments that have come due on or after the date of default, 03/01/2009, plus late charges, periodic adjustments to the monthly payment amount (if applicable) and other expenses associated with collection.

**THIS NOTICE CONTINUES ON REVERSE SIDE**
**SEE LAST PAGE FOR IMPORTANT DISCLOSURES**

- 1 -

The amount required to bring the Account current (reinstate) itemized as follows:

| | |
|---|---:|
| Number of Payments Due: | 2 |
| Total Delinquent Payments: | $6,889.90 |
| Late Charges: | $197.05 |
| Recoverable Corporate Advances: | $0.00 |
| Other Charges: | $0.00 |
| Less funds in Suspense: | ($0.00) |
| **Total Due:** | **$7,086.95** |

Because interest accruals, late charges and other expenses may be additionally incurred, the amount required to bring the Account current on the day you actually deliver your payment to HomEq may be greater than the amount provided above. Accordingly, you should contact HomEq at 1-800-795-5125, Monday – Thursday 5:00AM-9:00PM, Friday 5:00AM-6:00PM, Saturday 5:00AM-1:30PM, Sunday 8:00AM-5:00PM, Pacific Time to obtain the exact amount needed to bring the Account current prior to remitting payment.

You are hereby informed that you have the right to "cure" or reinstate the Account after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense you may have to acceleration.

Although you are not required to pay the total debt (or balance) of the Account prior to its maturity or acceleration, federal law requires HomEq to provide you with the total debt (or balance) due to HomEq as of the date of this letter, which is $422,052.21. The total estimated debt amount provided herein is for informational purposes only and this letter is not intended to act as a "payoff statement" or "demand" for you to pay the Account in full. If you want to obtain a written payoff statement, please submit your request to HomEq Servicing, Attention: Payoff Quotes, Mail Code CA3344, P.O. Box 13716, Sacramento, CA 95853 or otherwise contact HomEq at (877) 867-7378, Monday through Friday between 5:00 a.m. and 5:30 p.m., Pacific Time.

HomEq is acting as the Mortgage Loan Servicer for U.S. Bank National Association as Trustee for SAIL 2005-11 Trust, which is the current creditor/owner of the Note and Deed of Trust associated with your Account. HomEq, as Mortgage Loan Servicer, is representing U.S. Bank National Association as Trustee for SAIL 2005-11 Trust whose address is One Federal Street; EX-MA-FED, Boston, MA 02110. The Mortgage Loan Servicer is authorized to represent U.S. Bank National Association as Trustee for SAIL 2005-11 Trust by virtue of a servicing agreement. The Mortgage Loan Servicer is authorized to collect the debt and to administer any resulting foreclosure of the Property . **All notices, payments, correspondence, and other communications regarding your account should continue to be directed to HomEq.**

The following attorney will be representing U.S. Bank National Association as Trustee for SAIL 2005-11 Trust in a foreclosure action brought to enforce the Lien against your Property:

Leu & Okuda
Lester Leu
Lester@leu-okuda.com
222 Merchant Street
Honolulu, HI 96813
Phone (808) 538-1921

If you received a discharge of the Account through the Bankruptcy Court and if the Account has not been reaffirmed, the acceleration and sale will not result in your being held personally liable for the debt and this letter is not an attempt to collect a personal debt. However, failure to pay the delinquent balance is necessary to avoid foreclosure.

**THIS NOTICE CONTINUES ON NEXT PAGE**
**SEE LAST PAGE FOR IMPORTANT DISCLOSURES**

You are notified that this default and any other legal action that may occur as a result thereof, may be reported by HomEq to one or more credit reporting agencies.

**Except as otherwise contained herein, all communication concerning this matter must be made to HomEq via telephone at 1-800-795-5125, Monday - Thursday 5:00AM-9:00PM, Friday 5:00AM-6:00PM, Saturday 5:00AM-1:30PM, Sunday 8:00AM-5:00PM, Pacific Time or in writing to: HomEq Servicing, Attn: Account Research, Mail Code CA3345, P.O. Box 13716, Sacramento, CA 95853.**

Please take appropriate action with respect to the important matters discussed herein.

Sincerely,
HomEq Servicing

**HomEq Servicing is a debt collector. HomEq is attempting to collect a debt and any information obtained will be used for that purpose.**



3

# Exhibit "5"

## NOTICE OF MORTGAGEE'S NON-JUDICIAL FORECLOSURE UNDER POWER OF SALE

Pursuant to Hawaii Revised Statutes §667-5 through §667-10, as amended, and Mortgage dated October 10, 2005, recorded in the Office of the Assistant Registrar of the Land Court of the State of Hawaii as Document No. 3340803, which affects Transfer Certificate No. 775,009, notice is given that U.S. Bank National Association, as Trustee under Securitization Servicing Agreement dated as of December 1, 2005, Structured Asset Securities Corporation Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates, Series 2005-11, as Mortgagee, whose address is c/o 4837 Watt Avenue, Suite 100, North Highlands, CA 95660 , intends to foreclose its said mortgage and will hold a sale by public auction of Fee Simple property located at 91-743 Ihipehu St., Ewa Beach, HI 96706 (TMK: (1) 9-1-008-076), on May 6, 2010, at 12:00 noon, at the front entrance of the First Circuit Court located at 777 Punchbowl Street, Honolulu, Hawaii 96813. Terms of the sale are: (1) no upset price; (2) the property is sold strictly "AS IS" and "WHERE IS"; (3) the property is sold without covenant or warranty, express or implied, as to title, possession or encumbrances; (4) Purchaser must pay 10% of the highest successful bid in cash, certified or cashier's check at close of auction and prior to bidding must show proof of ability to make such payment, except for Mortgagee which may submit a credit bid up to the amount of its secured indebtedness; (5) the property is to be conveyed by Mortgagee's quitclaim conveyance, which Mortgagee shall provide within 35 days after the Affidavit of Sale is recorded, and upon payment by Purchaser of all costs related to sale, including, but not limited to costs of drafting conveyance document, notary fees, consent fees, escrow fees, conveyance taxes, and recording fees, together with any special assessments which may arise under Hawaii Revised Statutes §514A-90; (6) Purchaser shall be responsible for obtaining title insurance, if desired, however availability of title or other insurance shall not be a condition of closing; (7) the obligation for taxes and similar charges shall be prorated as of closing; (8) Purchaser may not take occupancy prior to closing and is responsible for securing possession as of closing; and (9) the sale may be postponed from time to time by public announcement made by Mortgagee or someone acting on its behalf.

NOTICE IS HEREBY GIVEN THAT THIS ACTION IS AN ATTEMPT TO COLLECT A DEBT, THAT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE, AND THAT THE DEBT MAY BE DISPUTED.

Inquiries should be directed to the attorney for Mortgagee, LESTER K.M. LEU, ESQ., LEU & OKUDA, Attorneys at Law, The Merchant House, 222 Merchant Street, Main Floor, Honolulu, Hawaii 96813.

Exhibit "6"

**PARTIES WHO HAVE RECORDED ENCUMBRANCES, LIENS AND/OR OTHER CLAIMS AGAINST THE PROPERTY:**

Re:    **Non-Judicial Foreclosure**
U.S. Bank National Association, as Trustee under Securitization Servicing Agreement dated as of December 1, 2005, Structured Asset Securities Corporation Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates, Series 2005-11 v. Heejoon Chung, et al.
Loan No. 0324605021
Property: 91-743 Ihipehu Street, Ewa Beach, HI 96706
TMK No.: (1) 9-1-008-076

Heejoon Chung
91-743 Ihipehu Street
Ewa Beach, HI 96706

Mortgage Electronic Registration
Systems, Inc., solely as nominee for
BNC Mortgage, Inc.
2617 College Park
Scottsbluff, NE 69361

Mortgage Electronic Registration
Systems, Inc., solely as nominee for
BNC Mortgage, Inc.
P.O Box 2026
Flint, MI 48501

State of Hawaii
Department of Taxation
830 Punchbowl Street
Honolulu, HI 96813

Department of Taxation
Collection Division
P.O. Box 259
Honolulu, HI 96809

City & County of Honolulu
Division of Treasury
Real Property Tax Collections
530 S. King Street, Suite 115
Honolulu, HI 96813

# Exhibit "7"

# RETURN AND ACKNOWLEDGMENT OF SERVICE

RE: Non-judicial Foreclosure
U.S. Bank National Association, as Trustee under Securitization
Servicing Agreement dated as of December 1, 2005, Structured
Asset Securities Corporation Structured Asset Investment Loan
Trust Mortgage Pass-Through Certificates, Series 2005-11 V.
Heejoon Chung, et. al.
Loan No. 0324605021
Property: 91-743 Ihipehu Street
Ewa Beach, HI 96706
TMK No.: (1) 9-1-008-076

DOCUMENTS SERVED:

1. Letters dated March 24, 2010, and addressed to each of the
persons to be served.

2. Notice of Mortgagee's Non-judicial Foreclosure Under Power of
Sale.

I do hereby certify that I received a copy of the documents listed
above and that I served the same on the following person(s) at the
date, time and place shown:

Department of Taxation

Signature: _____

Print Name: _____
Davis A. Ramigo
Private Secretary III
State of Hawaii - Department of Taxation
830 Punchbowl Street, Room 221

Position/Title: _____
Honolulu, HI 96813

Time: _3:20_ a.m./p.m. Date: __MAR 3 0 2010__

Address: _____


Real Property Tax Department

Signature: _____

Print Name: _____
VIRGINIA A. CABRAS – SR. CLERK
DEPARTMENT OF BUDGET AND FISCAL SERVICES

Position/Title: _____
530 S. King Street, Room 208
Honolulu, Hawaii 96813

Time: _3:15_ a.m./p.m. Date: __MAR 29 2010__

Address: _____


J:\FORECLOS\Non-Jud\homeq-chung\ros.doc

Heejoon Chung

Signature: _____

Print Name: _____

Time: _____ a.m./p.m. Date: _____

Address: _____

☐   Personal Service

☐   Substitute Service of Heejoon Chung through a person of suitable age and discretion then residing at his/her usual place of abode, since he/she could not be found after due and diligent search and inquiry.

☐   Substitute Service of Heejoon Chung through his/her authorized agent to receive service of process for him/her.

☒   Heejoon Chung was not found after due and diligent search and inquiry.

Dated: _____3-30-10_____.

CIVIL DEPUTY SHERIFF/PROCESS SERVER
Print Name: Richard K. Mitchell

7160 3901 9848 8053 9939

TO: Heejoon Chung
91-743 Ihipehu Street
Ewa Beach, HI 96706

SENDER: AT
REFERENCE: Homeq v. Chung  (NOS)

| PS Form 3800, January 2005 | | 0.44 |
|---|---|---|
| RETURN RECEIPT SERVICE | Postage | 2.80 |
| | Certified Fee | 2.30 |
| | Return Receipt Fee | 4.50 |
| | Restricted Delivery | 10.04 |
| | Total Postage & Fees | |

US Postal Service

## Receipt for Certified Mail

No Insurance Coverage Provided
Do Not Use for International Mail

POSTMARK OR DATE

LEU & OKUDA
ATTORNEYS AT LAW
A LAW PARTNERSHIP
THE MERCHANT HOUSE
222 MERCHANT STREET, MAIN FLOOR
HONOLULU, HAWAII 96813

Heejoon Chung
91-743 Ihipehu Stree
Ewa Beach, HI 9670

9670612405

9601302912

BC: 9601329120?

NIXIE          968    5E 1         DO 03/29/10

NOT DELIVERABLE AS ADDRESSED
UNABLE TO FORWARD
RETURN TO SENDER

*0872-21077-25-40

CERTIFIED MAIL

RETURN RECEIPT REQUESTED





02 1A
000.4386818
MAILED FROM ZIP CODE 96813
UNITED STATES POSTAGE
$ 10.040
MAR 25 2010
PITNEY BOWES

7160 3901 9848 8053 7256

**TO:** Mortgage Electronic Registration Systems, Inc.,
Solely as nominee for
BNC Mortgage, Inc.
2617 College Park
Scottsbluff, NE 69361

**SENDER:** KW

**REFERENCE:** Homeq v. Chung (NOS)

PS Form 3800, January 2005

| RETURN RECEIPT SERVICE | Postage | 0.44 |
| | Certified Fee | 2.80 |
| | Return Receipt Fee | 2.30 |
| | Restricted Delivery | 0.00 |
| | Total Postage & Fees | 5.54 |

US Postal Service
**Receipt for Certified Mail**
No Insurance Coverage Provided
Do Not Use for International Mail

POSTMARK OR DATE

---

2. Article Number

7160 3901 9848 8053 7256

COMPLETE THIS SECTION ON DELIVERY

A. Received by (Please Print Clearly)    B. Date of Delivery
APR 1 2 2011

C. Signature
X _____    ☐ Agent    ☐ Addressee

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:            ☐ No

3. Service Type   CERTIFIED MAIL

4. Restricted Delivery? (Extra Fee)   ☐ Yes

1. Article Addressed to:
Mortgage Electronic Registration Systems, Inc.,
Solely as nominee for
BNC Mortgage, Inc.
2617 College Park
Scottsbluff, NE 69361

Reference Information

Homeq v. Chung (NOS)

KW

PS Form 3811, January 2005        Domestic Return Receipt

7160 3901 9848 8053 9960

**TO:** Mortgage Electronic Registration Systems, Inc.,
solely as nominee for BNC Mortgage, Inc., a
Delaware corporation
P.O. Box 2026
Flint, MI 48501

**SENDER:** AT

**REFERENCE:** Homeq v. Chung (NOS)

| PS Form 3800, January 2005 | | 0.44 |
|---|---|---|
| RETURN RECEIPT SERVICE | Postage | 2.80 |
| | Certified Fee | 2.30 |
| | Return Receipt Fee | 0.00 |
| | Restricted Delivery | 5.54 |
| | Total Postage & Fees | |

**US Postal Service**

## Receipt for Certified Mail

No Insurance Coverage Provided
Do Not Use for International Mail

POSTMARK OR DATE

---

2. Article Number

7160 3901 9848 8053 9960

3. Service Type  CERTIFIED MAIL

4. Restricted Delivery? (Extra Fee)  ☐ Yes

1. Article Addressed to:
Mortgage Electronic Registration Systems,
Inc., solely as nominee for BNC Mortgage,
Inc., a Delaware corporation
P.O. Box 2026
Flint, MI 48501

PS Form 3811, January 2005          Domestic Return Receipt

COMPLETE THIS SECTION ON DELIVERY

A. Received by (Please Print Clearly)  B. Date of Delivery MAR 3 1 2010

C. Signature
X  Blaine K. Grant    ☐ Agent  ☐ Addressee

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

Reference Information

Homeq v. Chung (NOS)

AT

7160 3901 9848 8053 9946

TO: Director of Taxation
Department of Taxation
P.O. Box 259
Honolulu, HI 96813

SENDER: AT

REFERENCE: Homeq v. Chung (NOS)

| PS Form 3800, January 2005 | | 0.44 |
|---|---|---|
| RETURN RECEIPT SERVICE | Postage | 2.80 |
| | Certified Fee | 2.30 |
| | Return Receipt Fee | 0.00 |
| | Restricted Delivery | 5.54 |
| | Total Postage & Fees | |

| US Postal Service | POSTMARK OR DATE |
|---|---|
| **Receipt for Certified Mail** | |
| No Insurance Coverage Provided Do Not Use for International Mail | |

| 2. Article Number | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| 7160 3901 9848 8053 9946 | A. Received by (Please Print Clearly) MAR 2 B. Date of Delivery<br>WANDA BOYER<br>C. Signature<br>X *Wanda Boyer*  ☐ Agent ☐ Addressee |
| 3. Service Type **CERTIFIED MAIL** | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No |
| 4. Restricted Delivery? *(Extra Fee)* ☐ Yes | **Reference Information** |
| 1. Article Addressed to:<br>Director of Taxation<br>Department of Taxation<br>P.O. Box 259<br>Honolulu, HI 96813 | Homeq v. Chung (NOS)<br><br>AT<br>*Kw* |
| PS Form 3811, January 2005     Domestic Return Receipt | |

7160 3901 9848 8053 9953

**TO:** Director of Finance
City & County of Honolulu
Division of Treasury
Real Property Tax Collections
530 S. King St., Suite 115
Honolulu, HI 96813

**SENDER:** AT

**REFERENCE:** Homeq v. Chung (NOS)

| PS Form 3800, January 2005 | | 0.44 |
|---|---|---|
| RETURN RECEIPT SERVICE | Postage | 2.80 |
| | Certified Fee | 2.30 |
| | Return Receipt Fee | 0.00 |
| | Restricted Delivery | 5.54 |
| | Total Postage & Fees | |

US Postal Service

**Receipt for Certified Mail**

No Insurance Coverage Provided
Do Not Use for International Mail

POSTMARK OR DATE

---

**2. Article Number**

7160 3901 9848 8053 9953

**3. Service Type** CERTIFIED MAIL

**4. Restricted Delivery?** *(Extra Fee)* ☐ Yes

**1. Article Addressed to:**
Director of Finance
City & County of Honolulu
Division of Treasury
Real Property Tax Collections
530 S. King St., Suite 115
Honolulu, HI 96813

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly) — M. ARZADON
B. Date of Delivery — MAR 2 9 2010

C. Signature
☐ Agent
☐ Addressee

D. Is delivery address different from item 1?
If YES, enter delivery address below:
☐ Yes
☐ No

**Reference Information**

Homeq v. Chung (NOS)

AT

PS Form 3811, January 2005          Domestic Return Receipt

Exhibit "8"

# AFFIDAVIT OF POSTING

STATE OF HAWAII )
                                        )ss.
City & County of Honolulu )

Richard K. Mitchell, being first duly sworn on oath, deposes and says:

On  3-24.10        , 2010, I posted the NOTICE OF MORTGAGEE'S NON-JUDICIAL FORECLOSURE UNDER POWER OF SALE (a copy of which is attached) at the property located at 91-743 Ihipehu St., Ewa Beach, HI 96706

Further affiant sayeth naught.

_____
RICHARD K. MITCHELL

Subscribed and sworn to before me
this  14  day of  JULY        , 2010.

Doc Date:  3/24/10    # Pages: 1

MELISSA MARUSHIGE    FIRST    Circuit
      Name

Doc Description: AFFIDAVIT OF POSTING

_____

My commission expires _____.

**MELISSA MARUSHIGE**
Notary Public, First Judicial Circuit
State of Hawaii
Commission expires: 10/02/2013

## NOTICE OF MORTGAGEE'S NON-JUDICIAL FORECLOSURE UNDER POWER OF SALE

Pursuant to Hawaii Revised Statutes §667-5 through §667-10, as amended, and Mortgage dated October 10, 2005, recorded in the Office of the Assistant Registrar of the Land Court of the State of Hawaii as Document No. 3340803, which affects Transfer Certificate No. 775,009, notice is given that U.S. Bank National Association, as Trustee under Securitization Servicing Agreement dated as of December 1, 2005, Structured Asset Securities Corporation Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates, Series 2005-11, as Mortgagee, whose address is c/o 4837 Watt Avenue, Suite 100, North Highlands, CA 95660 , intends to foreclose its said mortgage and will hold a sale by public auction of Fee Simple property located at 91-743 Ihipehu St., Ewa Beach, HI 96706 (TMK: (1) 9-1-008-076), on May 6, 2010, at 12:00 noon, at the front entrance of the First Circuit Court located at 777 Punchbowl Street, Honolulu, Hawaii 96813. Terms of the sale are: (1) no upset price; (2) the property is sold strictly "AS IS" and "WHERE IS"; (3) the property is sold without covenant or warranty, express or implied, as to title, possession or encumbrances; (4) Purchaser must pay 10% of the highest successful bid in cash, certified or cashier's check at close of auction and prior to bidding must show proof of ability to make such payment, except for Mortgagee which may submit a credit bid up to the amount of its secured indebtedness; (5) the property is to be conveyed by Mortgagee's quitclaim conveyance, which Mortgagee shall provide within 35 days after the Affidavit of Sale is recorded, and upon payment by Purchaser of all costs related to sale, including, but not limited to costs of drafting conveyance document, notary fees, consent fees, escrow fees, conveyance taxes, and recording fees, together with any special assessments which may arise under Hawaii Revised Statutes §514A-90; (6) Purchaser shall be responsible for obtaining title insurance, if desired, however availability of title or other insurance shall not be a condition of closing; (7) the obligation for taxes and similar charges shall be prorated as of closing; (8) Purchaser may not take occupancy prior to closing and is responsible for securing possession as of closing; and (9) the sale may be postponed from time to time by public announcement made by Mortgagee or someone acting on its behalf.

NOTICE IS HEREBY GIVEN THAT THIS ACTION IS AN ATTEMPT TO COLLECT A DEBT, THAT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE, AND THAT THE DEBT MAY BE DISPUTED.

Inquiries should be directed to the attorney for Mortgagee, LESTER K.M. LEU, ESQ., LEU & OKUDA, Attorneys at Law, The Merchant House, 222 Merchant Street, Main Floor, Honolulu, Hawaii 96813.

Exhibit "9"

**IN THE MATTER OF**

Chung

)
)
)
)
)
)
)
)

*AFFIDAVIT OF PUBLICATION*

**STATE OF HAWAII** )
) SS.
**City and County of Honolulu** )

| | |
|---|---|
| **Doc. Date:** APR - 9 2010 | **# Pages:** 1 |
| **Notary Name:** Patricia K. Reese | First Judicial **Circuit** |
| **Doc. Description:** Affidavit of | |
| Publication | |
| *[signature]* APR - 9 2010 | |
| Notary Signature          Date | |

*[Notary seal: PATRICIA K. REESE, NOTARY PUBLIC, Comm. No. 86-467, STATE OF HAWAII]*

<u>Rose Mae Roasles</u> being duly sworn, deposes and says that she is a clerk, duly authorized to execute this affidavit of MidWeek Printing, Inc. publisher of MidWeek and the Honolulu Star-Bulletin, that said newspapers are newspapers of general circulation in the State of Hawaii, and that the attached notice is true notice as was published in the aforementioned newspapers as follows:

Honolulu Star-Bulletin     3     times on:

03/26, 04/02, 04/09/2010

Midweek Wed.     0     times on:

Midweek Fri.     0     times on:

_____ times on:

And that affiant is not a party to or in any way interested in the above entitled matter.

<u>*[signature]*</u>
Rose Mae Roasles

Subscribed to and sworn before me this  9th  day

of  April  A.D. 20 10

*[signature]*

Patricia K. Reese, Notary Public of the First Judicial Circuit, State of Hawaii

My commission expires:  October 07, 2010

*[Notary seal: PATRICIA K. REESE, NOTARY PUBLIC, Comm. No. 86-467, STATE OF HAWAII]*

Ad #  0000183478

LN: _____

NOTICE OF MORTGAGEE'S NON-JUDICIAL FORECLOSURE UNDER POWER OF SALE

Pursuant to Hawaii Revised Statutes §667-5 through §667-10, as amended, and Mortgage dated October 10, 2005, recorded in the Office of the Assistant Registrar of the Land Court of the State of Hawaii as Document No. 3340803, which affects Transfer Certificate No. 775,009, notice is given that U.S. Bank National Association, as Trustee under Securitization Servicing Agreement dated as of December 1, 2008, Structured Asset Securities Corporation Structured Asset Investment Loan Trust Mortgage Pass-Through Certificate, Series 2005-11, as Mortgagee, whose address is c/o 4837 Watt Avenue, Suite 100, North Highlands, CA 95660 , intends to foreclose its said mortgage and will hold a sale by public auction of Fee Simple property located at 91-743 Ihipelu St, Ewa Beach, HI 96706 (TMK: (1) 9-1-008-078), on May 6, 2010, at 12:00 noon, at the front entrance of the First Circuit Court located at 777 Punchbowl Street, Honolulu, Hawaii 96813. Terms of the sale are: (1) no upset price; (2) the property is sold solely "AS IS" and "WHERE IS"; (3) the property is sold without covenant or warranty, express or implied, as to title, possession or encumbrances; (4) Purchaser must pay 10% of the highest successful bid in cash, certified or cashier's check at close of auction and prior to bidding must show proof of ability to make such payment, except for Mortgagee which may submit a credit bid up to the amount of its secured indebtedness; (5) the property is to be conveyed by Mortgagee's quitclaim conveyance, which Mortgagee shall provide within 35 days after the Affidavit of Sale is recorded, and upon payment by Purchaser of all costs related to sale, including, but not limited to costs of drafting conveyance document, notary fees, consent fees, escrow fees, conveyance taxes, and recording fees, together with any special assessments which may arise under Hawaii Revised Statutes §514A-90; (6) Purchaser shall be responsible for obtaining title insurance, if desired, however availability of title or other insurance shall not be a condition of closing; (7) the obligation for taxes and similar charges shall be prorated as of closing; (8) Purchaser may not take occupancy prior to closing and is responsible for securing possession as of closing; and (9) the sale may be postponed from time to time by public announcement made by Mortgagee or someone acting on its behalf.

NOTICE IS HEREBY GIVEN THAT THIS ACTION IS AN ATTEMPT TO COLLECT A DEBT, THAT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE, AND THAT THE DEBT MAY BE DISPUTED.

Inquiries should be directed to the attorney for Mortgagee, LESTER K.M. LEU, ESQ., LEU & OKUDA, Attorneys at Law, The Merchant House, 222 Merchant Street, Main Floor, Honolulu, Hawaii 96813.      (SB183478  3/26, 4/2, 4/9/10)

Exhibit "10"

## NOTICE OF MORTGAGEE'S RESCHEDULED
## NON-JUDICIAL FORECLOSURE UNDER POWER OF SALE

NOTICE IS HEREBY GIVEN that U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE UNDER SECURITIZATION SERVICING AGREEMENT DATED AS OF DECEMBER 1, 2005, STRUCTURED ASSET SECURITIES CORPORATION STRUCTURED ASSET INVESTMENT LOAN TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-11, as Mortgagee, whose address is 4837 WATT AVENUE, SUITE 100, NORTH HIGHLANDS, CA 95660, has rescheduled the sale by public auction under its mortgage dated OCTOBER 10, 2005 and recorded in the Office of the Assistant Registrar of the Land Court as Document No. 3340803, which affects Transfer Certificate No. 775,009 of FEE SIMPLE property located at 91-743 IHIPEHU ST., EWA BEACH, HI 96706 (TMK: (1) 9-1-008-076), to JULY 8, 2010, at 12:00 noon, at the front entrance of the First Circuit Court Building, 777 Punchbowl Street, Honolulu, Hawaii 96813. Terms of the sale are set forth in the Notice published in the Honolulu Star Bulletin on **3/26/10, 4/2/10, and 4/9/10**.

> NOTICE IS HEREBY GIVEN THAT THIS ACTION IS AN ATTEMPT TO COLLECT A DEBT, THAT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE, AND THAT THE DEBT MAY BE DISPUTED.

Inquiries should be directed to KARYN A. DOI, Esq., LEU & OKUDA, Attys-at-Law, as attorney for Mortgagee, at The Merchant House, 222 Merchant Street, Main Floor, Honolulu, HI 96813.

Exhibit "11"

**PARTIES WHO HAVE RECORDED ENCUMBRANCES, LIENS AND/OR OTHER CLAIMS AGAINST THE PROPERTY:**

**Re:**     **Rescheduled Non-Judicial Foreclosure**
U.S. Bank National Association, as Trustee under Securitization Servicing Agreement dated as of December 1, 2005, Structured Asset Securities Corporation Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates, Series 2005-11 v. Heejoon Chung, et al.
Loan No. 0324605021
Property: 91-743 Ihipehu Street, Ewa Beach, HI 96706
TMK No.: (1) 9-1-008-076

---

Heejoon Chung
91-743 Ihipehu Street
Ewa Beach, HI 96706

Heejoon Chung
91-1520 Kaaimalu Pl
Ewa Beach, HI 96706

Heejoon Chung
95-1027 Ainamaku Dr. #116
Mililani, HI 96789

Heejoon Chung
198 Shimogawa Pl. #103
Wahiawa, HI 96786

Heejoon Chung
94-821 Lumiaina St. Ste A
Waipahu, HI 96797

Heejoon Chung
850 Atlantic Street #215
Bridgeport, CT 06604

Mortgage Electronic Registration
Systems, Inc., solely as nominee for
BNC Mortgage, Inc.
2617 College Park
Scottsbluff, NE 69361

Mortgage Electronic Registration
Systems, Inc., solely as nominee for
BNC Mortgage, Inc.
P.O Box 2026
Flint, MI 48501

State of Hawaii
Department of Taxation
830 Punchbowl Street
Honolulu, HI 96813

Department of Taxation
Collection Division
P.O. Box 259
Honolulu, HI 96809

City & County of Honolulu
Division of Treasury
Real Property Tax Collections
530 S. King Street, Suite 115
Honolulu, HI 96813

# Exhibit "12"

<u>RETURN AND ACKNOWLEDGMENT OF SERVICE</u>

**RE:** **Rescheduled Non-judicial Foreclosure**
U.S. Bank National Association, as Trustee under Securitization Servicing Agreement dated as of December 1, 2005, Structured Asset Securities Corporation Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates, Series 2005-11 V. Heejoon Chung, et al.
Loan No. 0324605021
Property:  91-743 Ihipehu Street, Ewa Beach, HI 96706
TMK No.: (1) 9-1-008-076

DOCUMENTS SERVED:

1. Letters dated June 9, 2010, and addressed to each of the persons to be served.
2. Notice of Mortgagee's Rescheduled Non-judicial Foreclosure Under Power of Sale.
3. Notice of Mortgagee's Non-judicial Foreclosure Under Power of Sale.


I do hereby certify that I received a copy of the documents listed above and that I served the same on the following person(s) at the date, time and place shown:


<u>Heejoon Chung</u>

Signature: _____

Print Name: _____

Time: _____ a.m./p.m. Date: _____

Address: _____

☐   Personal Service

☐   Substitute Service of Heejoon Chung through a person of suitable age and discretion then residing at his/her usual place of abode, since he/she could not be found after due and diligent search and inquiry.

☐   Substitute Service of Heejoon Chung through his/her authorized agent to receive service of process for him/her.

☑   Heejoon Chung was not found after due and diligent search and inquiry.

Dated: _____ 6·9·10 _____.

CIVIL DEPUTY SHERIFF/PROCESS SERVER
Print Name: Richard K. Mitchell

U.S. Bank National Association, et. al., Plaintiff(s)
vs.
Heejoon Chung, et. al., Defendant(s)

Service of Process by

**APS International, Ltd.**
1-800-328-7171

APS International Plaza
7800 Glenroy Road
Minneapolis, MN 55439-3122

APS File #: 104631-0001

# AFFIDAVIT OF DUE AND DILIGENT ATTEMPT

Service of Process on:

LEU, OKUDA & LEU
Ms Katrina Wilson
222 Merchant St., Main Floor
Honolulu, HI 96813

--Heejoon Chung
Court Case No. _____

Customer File: 91-743 Ihipehu Street

State of: ___CONNECTICUT___ ) ss.
County of: ___HARTFORD___ )

**Name of Server:** ___Eric Rubin___, undersigned, being duly sworn, deposes and says that at all times mentioned herein, s/he was of legal age and was not a party to this action;

**Documents Served:** the undersigned attempted to serve the documents described as:
Letter; Notice of Mortgagee's Non-Judicial Foreclosure Under Power of Sale
Notice of Mortgagee's Rescheduled Non-Judicial Foreclosure under Power of Sale

**Service of Process on:** The undersigned attempted to serve the documents on
Heejoon Chung
and after due and diligent efforts, was unable to effect service.
The following is a list of the attempts made to effect service:

**Attempts:**

Dates/Time/Address Attempted: 850 Atlantic Street #215, Bridgeport, CT 06604     6/10/10
Reason for Non-Service: The location is a locked apartment building. The Subject is
Dates/Time/Address Attempted: not listed. The call box for Unit 215 is out of service.
Reason for Non-Service: _____
Dates/Time/Address Attempted: _____
Reason for Non-Service: _____

Based upon the above stated facts, Affiant believes the defendant is avoiding service.

**Signature of Server:** Undersigned declares under penalty of perjury that the foregoing is true and correct.

Signature of Server
APS International, Ltd.

Subscribed and sworn to before me this
16 day of June, 2010

Notary Public     (Commission Expires)
8/31/2014

7160 3901 9848 9398 0704

**TO:** Heejoon Chung
91-743 Ihipehu Street
Ewa Beach, HI 96706

**SENDER:** KW

**REFERENCE:** Homeq v. Chung (Rsch NOS)

PS Form 3800, January 2005

| RETURN RECEIPT SERVICE | Postage | 0.44 |
|---|---|---|
| | Certified Fee | 2.80 |
| | Return Receipt Fee | 2.30 |
| | Restricted Delivery | |
| | Total Postage & Fees | 4.50 |
| | | 10.04 |

US Postal Service
**Receipt for Certified Mail**
No Insurance Coverage Provided
Do Not Use for International Mail

POSTMARK OR DATE

---

LEU & OKUDA
ATTORNEYS AT LAW
A LAW PARTNERSHIP
THE MERCHANT HOUSE
222 MERCHANT STREET, MAIN FLOOR
HONOLULU, HAWAII 96813



CERTIFIED MAIL

RETURN RECEIPT REQUESTED

7160 3901 9848 9398 0704



UNITED STATES POSTAGE
$ 10.04
002 1A
0004386818
JUN 08 2010
PITNEY BOWES
MAILED FROM ZIP CODE 96813

96706-2405
9581301812

Heejoon Chung
91-743 Ihipehu!
Ewa Beach, HI

NIXIE        968   SE 1      00 06/10/10

RETURN TO SENDER
NOT DELIVERABLE AS ADDRESSED
UNABLE TO FORWARD

BC: 9681329129S
  *0572-17533-06-35



7160 3901 9848 9398 0711

**TO:**
Heejoon Chung
91-1520 Kaaimalu Pl
Ewa Beach, HI 96706

**SENDER:** KW

**REFERENCE:** Homeq v. Chung (Rsch NOS)

PS Form 3800, January 2005

| RETURN RECEIPT SERVICE | Postage | 0.44 |
|---|---|---|
| | Certified Fee | 2.80 |
| | Return Receipt Fee | 2.30 |
| | Restricted Delivery | 4.50 |
| | Total Postage & Fees | 10.04 |

| US Postal Service **Receipt for Certified Mail** No Insurance Coverage Provided Do Not Use for International Mail | POSTMARK OR DATE |
|---|---|

LEU & OKUDA
ATTORNEYS AT LAW
A LAW PARTNERSHIP
THE MERCHANT HOUSE
222 MERCHANT STREET, MAIN FLOOR
HONOLULU, HAWAII 96813



CERTIFIED MAIL

7160 3901 9848 9398 0711

UNITED STATES POSTAL SERVICE
PITNEY BOWES
02 1A
000 4386818
$ 10.04°
JUN 08 2010
MAILED FROM ZIP CODE 96813

RETURN RECEIPT REQUESTED

Heejoon Chung
91-1520 Kaaima
Ewa Beach, HI

NIXIE        968    5E 1        00 06/11/10        K

RETURN TO SENDER
ATTEMPTED - NOT KNOWN
UNABLE TO FORWARD

BC: 96813291299        *0572-17813-08-33

7160 3901 9848 9398 0728

**TO:**
Heejoon Chung
95-1027 Ainamaku Dr. #116
Mililani, HI 96789

**SENDER:** KW

**REFERENCE:** Homeq v. Chung (Rsch NOS)

PS Form 3800, January 2005

| RETURN RECEIPT SERVICE | Postage | |
|---|---|---|
| | Certified Fee | 0.44 |
| | Return Receipt Fee | 2.80 |
| | Restricted Delivery | 2.30 |
| | Total Postage & Fees | 4.50 |
| | | 10.04 |

US Postal Service
**Receipt for Certified Mail**
No Insurance Coverage Provided
Do Not Use for International Mail

POSTMARK OR DATE

---

**LEU & OKUDA**
ATTORNEYS AT LAW
A LAW PARTNERSHIP
THE MERCHANT HOUSE
222 MERCHANT STREET, MAIN FLOOR
HONOLULU, HAWAII 96813

ATTEMPTED, NOT KNOWN



**CERTIFIED MAIL**

7160 3901 9848 9398 0728

RETURN RECEIPT REQUESTED

RESTRICTED DELIVERY

Heejoon Chung
95-1027 Ainamaku Dr. #116
Mililani, HI 96789

UNITED STATES POSTAL SERVICE
PITNEY BOWES
$ 10.040
02 1A
0004386818
MAILED FROM ZIP CODE 96813
JUN 08 2010

7160 3901 9848 9398 0742

TO:
Heejoon Chung
94-821 Lumiaina St. Ste A
Waipahu, HI 96797

SENDER: KW

REFERENCE: Homeq v. Chung (Rsch NOS)

PS Form 3800, January 2005

| RETURN RECEIPT SERVICE | Postage | 0.44 |
| | Certified Fee | 2.80 |
| | Return Receipt Fee | 2.30 |
| | Restricted Delivery | 4.50 |
| | Total Postage & Fees | 10.04 |

**US Postal Service**
**Receipt for**
**Certified Mail**

No Insurance Coverage Provided
Do Not Use for International Mail

POSTMARK OR DATE

---

LEU & OKUDA
ATTORNEYS AT LAW
A LAW PARTNERSHIP
THE MERCHANT HOUSE
222 MERCHANT STREET, MAIN FLOOR
HONOLULU, HAWAII 96813

CERTIFIED MAIL

RETURN RECEIPT REQUESTED

7160 3901 9848 9398 0742

RESTRICTED DELIVERY

STARBUCKS

Heejoon Chung
94-821 Lumiaina St. Ste A
Waipahu, HI 96797

☐ INSUFFICIENT ADDRESS
☐ NO SUCH STREET ID NUMBER
☐ REFUSED ☐ UNCLAIMED
☐ MOVED LEFT NO ADDRESS
☐ NOT KNOWN
☐ ROUTE — INITIALS

☐ INSUFFICIENT ADDRESS
☐ NO SUCH STREET ID NUMBER
☐ REFUSED ☐ UNCLAIMED
☐ MOVED LEFT NO ADDRESS
☐ NOT KNOWN
☐ ATTEMPTED NOT KNOWN

UNITED STATES POSTAGE
02 1A
0004386818
$10.040
JUN08 2010
MAILED FROM ZIP CODE 96813

7160 3901 9848 9398 0735

**TO:** Heejoon Chung
198 Shimogawa Pl. #103
Wahiawa, HI 96786

**SENDER:** KW

**REFERENCE:** Homeq v. Chung (Rsch NOS)

PS Form 3800, January 2005

| RETURN RECEIPT SERVICE | Postage | 0.44 |
| --- | --- | --- |
| | Certified Fee | 2.80 |
| | Return Receipt Fee | 2.30 |
| | Restricted Delivery | 4.50 |
| | Total Postage & Fees | 10.04 |

US Postal Service
**Receipt for Certified Mail**

No Insurance Coverage Provided
Do Not Use for International Mail

POSTMARK OR DATE

SCANNED

CERTIFIED MAIL

$ 10.04
02 1A JUN 08 2010
0004386818
MAILED FROM ZIP CODE 96813

RESTRICTED DELIVERY

RETURN RECEIPT REQUESTED

7160 3901 9848 9398 0735

ll.ll..ll..ll.l.l.ll.l
Heejoon Chung
198 Shimogawa Pl. #103
Wahiawa, HI 96786

RETURNED TO SENDER

☐ MOVED, LEFT NO ADDRESS
☐ FORWARDING ORDER EXPIRED
☐ ATTEMPTED-NOT KNOWN
☐ UNCLAIMED ☐ REFUSED
☐ NO SUCH STREET ☐ NO SUCH...
☐ INSUFFICIENT ADDRESS

**LEU & OKUDA**
ATTORNEYS AT LAW
A LAW PARTNERSHIP
THE MERCHANT HOUSE
222 MERCHANT STREET, MAIN FLOOR
HONOLULU, HAWAII 96813

7160 3901 9848 9398 0759

**TO:** Heejoon Chung
850 Atlantic Street #215
Bridgeport, CT 06604

**SENDER:** KW

**REFERENCE:** Homeq v. Chung (Rsch NOS)

PS Form 3800, January 2005

| RETURN RECEIPT SERVICE | Postage | 0.44 |
|---|---|---|
| | Certified Fee | 2.80 |
| | Return Receipt Fee | 2.30 |
| | Restricted Delivery | 4.50 |
| | Total Postage & Fees | 10.04 |

| US Postal Service | POSTMARK OR DATE |
|---|---|

**Receipt for Certified Mail**

No Insurance Coverage Provided
Do Not Use for International Mail



LEU & OKUDA
ATTORNEYS AT LAW
A LAW PARTNERSHIP
THE MERCHANT HOUSE
222 MERCHANT STREET, MAIN FLOOR
HONOLULU, HAWAII 96813

RETURN RECEIPT REQUESTED

7160 3901 9848 9398 0759

CERTIFIED MAIL



UNITED STATES POSTAGE
$ 10.04°
0 2 1A
000 4368818
MAILED FROM ZIPCODE 96813
JUN 08 2010
PITNEY BOWES

**7160 3901 9848 9398 0803**

**TO:** Mortgage Electronic Registration
Systems, Inc., solely as nominee for
BNC Mortgage, Inc.
P.O Box 2026
Flint, MI 48501

**SENDER:** KW

**REFERENCE:** Homeq v. Chung (Rsch NOS)

PS Form 3800, January 2005

| RETURN RECEIPT SERVICE | | |
|---|---|---|
| | Postage | 0.44 |
| | Certified Fee | 2.80 |
| | Return Receipt Fee | 2.30 |
| | Restricted Delivery | 0.00 |
| | Total Postage & Fees | 5.54 |

| US Postal Service | POSTMARK OR DATE |
|---|---|
| **Receipt for Certified Mail** No Insurance Coverage Provided Do Not Use for International Mail | |

---

2. Article Number

**7160 3901 9848 9398 0803**

3. Service Type **CERTIFIED MAIL**

4. Restricted Delivery? *(Extra Fee)* ☐ Yes

1. Article Addressed to:

Mortgage Electronic Registration
Systems, Inc., solely as nominee for
BNC Mortgage, Inc.
P.O Box 2026
Flint, MI 48501

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)    B. Date of Delivery JUN 1 4 2010

C. Signature

X **Blaine K. Grant**    ☐ Agent  ☐ Addressee

D. Is delivery address different from item 1?    ☐ Yes
If YES, enter delivery address below:    ☐ No

**Reference Information**

Homeq v. Chung (Rsch NOS)

KW

PS Form 3811, January 2005    Domestic Return Receipt

7160 3901 9848 9398 0797

**TO:** Mortgage Electronic Registration
Systems, Inc., solely as nominee for
BNC Mortgage, Inc.
2617 College Park
Scottsbluff, NE 69361

**SENDER:** KW

**REFERENCE:** Homeq v. Chung (Rsch NOS)

PS Form 3800, January 2005

| RETURN RECEIPT SERVICE | | |
|---|---|---|
| | Postage | 0.44 |
| | Certified Fee | 2.80 |
| | Return Receipt Fee | 2.30 |
| | Restricted Delivery | 0.00 |
| | Total Postage & Fees | 5.54 |

US Postal Service

**Receipt for Certified Mail**

No Insurance Coverage Provided
Do Not Use for International Mail

POSTMARK OR DATE

---

| 2. Article Number | COMPLETE THIS SECTION ON DELIVERY | |
|---|---|---|
| | A. Received by (Please Print Clearly) | B. Date of Delivery |
| 7160 3901 9848 9398 0797 | C. Signature  X _____ | ☐ Agent  ☐ Addressee |
| 3. Service Type  CERTIFIED MAIL | D. Is delivery address different from item 1? | ☐ Yes |
| 4. Restricted Delivery? (Extra Fee) ☐ Yes | If YES, enter delivery address below: | ☐ No |

1. Article Addressed to:

Mortgage Electronic Registration
Systems, Inc., solely as nominee for
BNC Mortgage, Inc.
2617 College Park
Scottsbluff, NE 69361

**Reference Information**

Homeq v. Chung (Rsch NOS)

KW   JUN 1 1 2010

PS Form 3811, January 2005          Domestic Return Receipt

7160 3901 9848 9398 0773

**TO:** Department of Taxation
Collection Division
P.O. Box 259
Honolulu, HI 96813

**SENDER:** KW

**REFERENCE:** Homeq v. Chung (Rsch NOS)

PS Form 3800, January 2005

| RETURN RECEIPT SERVICE | Postage | 0.44 |
|---|---|---|
| | Certified Fee | 2.80 |
| | Return Receipt Fee | 2.30 |
| | Restricted Delivery | 0.00 |
| | Total Postage & Fees | 5.54 |

US Postal Service
**Receipt for Certified Mail**

No Insurance Coverage Provided
Do Not Use for International Mail

POSTMARK OR DATE



2. Article Number

7160 3901 9848 9398 0773

3. Service Type  **CERTIFIED MAIL**

4. Restricted Delivery? (Extra Fee)  ☐ Yes

1. Article Addressed to:

Department of Taxation
Collection Division
P.O. Box 259
Honolulu, HI 96813

A. Received by (Please Print Clearly)    B. Date of Delivery

**COMPLETE THIS SECTION ON DELIVERY**

C. Signature
x Kenneth Hashimoto    JUN - 9 2010
☐ Agent  ☐ Addressee

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

Reference Information

Homeq v. Chung (Rsch NOS)

KW

PS Form 3811, January 2005    Domestic Return Receipt

7160 3901 9848 9398 0766

**TO:** State of Hawaii
Department of Taxation
830 Punchbowl Street
Honolulu, HI 96813

**SENDER:** KW

**REFERENCE:** Homeq v. Chung (Rsch NOS)

PS Form 3800, January 2005

| RETURN RECEIPT SERVICE | Postage | 0.44 |
|---|---|---|
| | Certified Fee | 2.80 |
| | Return Receipt Fee | 2.30 |
| | Restricted Delivery | 0.00 |
| | Total Postage & Fees | 5.54 |

US Postal Service

**Receipt for Certified Mail**

No Insurance Coverage Provided
Do Not Use for International Mail

POSTMARK OR DATE

---

2. Article Number

7160 3901 9848 9398 0766

3. Service Type **CERTIFIED MAIL**

4. Restricted Delivery? *(Extra Fee)* ☐ Yes

1. Article Addressed to:

State of Hawaii
Department of Taxation
830 Punchbowl Street
Honolulu, HI 96813

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly) | B. Date of Delivery

C. Signature  JSON LAIMANA        JUN - 9 2010

X ☐ Agent ☐ Addressee

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

**Reference Information**

Homeq v. Chung (Rsch NOS)

KW          **RESTRICTED DE**

PS Form 3811, January 2005        Domestic Return Receipt

7160 3901 9848 9398 0780

**TO:**
Director of Finance
City & County of Honolulu
Division of Treasury
Real Property Tax Collections
530 S. King St., Suite 115
Honolulu, HI 96813

**SENDER:** KW

**REFERENCE:** Homeq v. Chung (Rsch NOS)

PS Form 3800, January 2005

| RETURN RECEIPT SERVICE | Postage | 0.44 |
|---|---|---|
| | Certified Fee | 2.80 |
| | Return Receipt Fee | 2.30 |
| | Restricted Delivery | 0.00 |
| | Total Postage & Fees | 5.54 |

US Postal Service

**Receipt for Certified Mail**

No Insurance Coverage Provided
Do Not Use for International Mail

POSTMARK OR DATE

---

2. Article Number

7160 3901 9848 9398 0780

COMPLETE THIS SECTION ON DELIVERY

A. Received by (Please Print Clearly)  I. VISITACION

B. Date of Delivery

C. Signature
X

☐ Agent
☐ Addressee

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type   CERTIFIED MAIL

4. Restricted Delivery? (Extra Fee)   ☐ Yes

1. Article Addressed to:

Director of Finance
City & County of Honolulu
Division of Treasury
Real Property Tax Collections
530 S. King St., Suite 115
Honolulu, HI 96813

**Reference Information**

Homeq v. Chung (Rsch NOS)

KW

PS Form 3811, January 2005       Domestic Return Receipt

Exhibit "13"

AFFIDAVIT OF POSTING

STATE OF HAWAII                    )
                                   )ss.
City & County of Honolulu          )

        Richard K. Mitchell, being first duly sworn on oath,
deposes and says:

        On _____6·9_____, 2010, I posted the NOTICE OF
MORTGAGEE'S RESCHEDULED NON-JUDICIAL FORECLOSURE UNDER POWER OF SALE
and NOTICE OF MORTGAGEE'S NON-JUDICIAL FORECLOSURE UNDER POWER OF SALE
(a copy of which is attached) at the property located at 91-743
Ihipehu St., Ewa Beach, HI 96706 (TMK: (1) 9-1-008-076).

        Further affiant sayeth naught.

                                    _____
                                    RICHARD K. MITCHELL

Subscribed and sworn to before me
this __4__ day of __JULY_____, 2010.

Doc Date: _6/9/10_   # Pages: 1

**MELISSA MARUSHIGE**        FIRST     Circuit
      Name

Doc Description: AFFIDAVIT OF POSTING



My commission expires _____.

        **MELISSA MARUSHIGE**
   Notary Public, First Judicial Circuit
          State of Hawaii
   Commission expires: 10/02/2013

## NOTICE OF MORTGAGEE'S RESCHEDULED
## NON-JUDICIAL FORECLOSURE UNDER POWER OF SALE

NOTICE IS HEREBY GIVEN that U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE UNDER SECURITIZATION SERVICING AGREEMENT DATED AS OF DECEMBER 1, 2005, STRUCTURED ASSET SECURITIES CORPORATION STRUCTURED ASSET INVESTMENT LOAN TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-11, as Mortgagee, whose address is 4837 WATT AVENUE, SUITE 100, NORTH HIGHLANDS, CA 95660, has rescheduled the sale by public auction under its mortgage dated OCTOBER 10, 2005 and recorded in the Office of the Assistant Registrar of the Land Court as Document No. 3340803, which affects Transfer Certificate No. 775,009 of FEE SIMPLE property located at 91-743 IHIPEHU ST., EWA BEACH, HI 96706 (TMK: (1) 9-1-008-076), to JULY 8, 2010, at 12:00 noon, at the front entrance of the First Circuit Court Building, 777 Punchbowl Street, Honolulu, Hawaii 96813. Terms of the sale are set forth in the Notice published in the Honolulu Star Bulletin on **3/26/10, 4/2/10, and 4/9/10.**

NOTICE IS HEREBY GIVEN THAT THIS ACTION IS AN ATTEMPT TO COLLECT A DEBT, THAT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE, AND THAT THE DEBT MAY BE DISPUTED.

Inquiries should be directed to KARYN A. DOI, Esq., LEU & OKUDA, Attys-at-Law, as attorney for Mortgagee, at The Merchant House, 222 Merchant Street, Main Floor, Honolulu, HI 96813.

## NOTICE OF MORTGAGEE'S NON-JUDICIAL FORECLOSURE UNDER POWER OF SALE

Pursuant to Hawaii Revised Statutes §667-5 through §667-10, as amended, and Mortgage dated October 10, 2005, recorded in the Office of the Assistant Registrar of the Land Court of the State of Hawaii as Document No. 3340803, which affects Transfer Certificate No. 775,009, notice is given that U.S. Bank National Association, as Trustee under Securitization Servicing Agreement dated as of December 1, 2005, Structured Asset Securities Corporation Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates, Series 2005-11, as Mortgagee, whose address is c/o 4837 Watt Avenue, Suite 100, North Highlands, CA 95660 , intends to foreclose its said mortgage and will hold a sale by public auction of Fee Simple property located at 91-743 Ihipehu St., Ewa Beach, HI 96706 (TMK: (1) 9-1-008-076), on May 6, 2010, at 12:00 noon, at the front entrance of the First Circuit Court located at 777 Punchbowl Street, Honolulu, Hawaii 96813. Terms of the sale are: (1) no upset price; (2) the property is sold strictly "AS IS" and "WHERE IS"; (3) the property is sold without covenant or warranty, express or implied, as to title, possession or encumbrances; (4) Purchaser must pay 10% of the highest successful bid in cash, certified or cashier's check at close of auction and prior to bidding must show proof of ability to make such payment, except for Mortgagee which may submit a credit bid up to the amount of its secured indebtedness; (5) the property is to be conveyed by Mortgagee's quitclaim conveyance, which Mortgagee shall provide within 35 days after the Affidavit of Sale is recorded, and upon payment by Purchaser of all costs related to sale, including, but not limited to costs of drafting conveyance document, notary fees, consent fees, escrow fees, conveyance taxes, and recording fees, together with any special assessments which may arise under Hawaii Revised Statutes §514A-90; (6) Purchaser shall be responsible for obtaining title insurance, if desired, however availability of title or other insurance shall not be a condition of closing; (7) the obligation for taxes and similar charges shall be prorated as of closing; (8) Purchaser may not take occupancy prior to closing and is responsible for securing possession as of closing; and (9) the sale may be postponed from time to time by public announcement made by Mortgagee or someone acting on its behalf.

NOTICE IS HEREBY GIVEN THAT THIS ACTION IS AN ATTEMPT TO COLLECT A DEBT, THAT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE, AND THAT THE DEBT MAY BE DISPUTED.

Inquiries should be directed to the attorney for Mortgagee, LESTER K.M. LEU, ESQ., LEU & OKUDA, Attorneys at Law, The Merchant House, 222 Merchant Street, Main Floor, Honolulu, Hawaii 96813.

Exhibit "14"

# AFFIDAVIT OF PUBLICATION

### IN THE MATTER OF
Chung

 }
 }
 }
 }
 }
 }
 }

**STATE OF HAWAII**      }
            } SS.
**City and County of Honolulu**   }

| | |
|---|---|
| **Doc. Date:**   JUN 1 4 2010 | **# Pages:**   1 |
| **Notary Name:** Patricia K. Reese | First Judicial **Circuit** |
| **Doc. Description:**    Affidavit of | |
| Publication | |

PATRICIA K. REESE
NOTARY
[Stamp in Seal]
Comm. No.
86-457
STATE OF HAWAII

_Notary Signature_    JUN 1 4 2010    Date

NOTICE OF MORTGAGEE'S RESCHEDULED
NON-JUDICIAL FORECLOSURE UNDER POWER OF SALE

NOTICE IS HEREBY GIVEN that U.S. BANK, NATIONAL
ASSOCIATION, AS TRUSTEE UNDER SECURITIZATION
SERVICING AGREEMENT DATED AS OF DECEMBER 1,
2005, STRUCTURED ASSET SECURITIES CORPORATION
STRUCTURED ASSET INVESTMENT LOAN TRUST MORTGAGE
PASS-THROUGH CERTIFICATES, SERIES 2005-11, at
Mortgagee, whose address is 4891 MAIN AVENUE, SUITE
300, NORTH HIGHLANDS, CA 95660, has scheduled for
sale by public auction under its mortgage dated OCTOBER
10, 2005 and recorded in the Office of the Assistant
Registrar of the Land Court as Document No. 3346893,
which affects Transfer Certificate No. 770,006 of FEE
SIMPLE property located at 91-143, [illegible] St., EWA
BEACH, HI 96706 [TMK: (1) 9-1-008-0[illegible]. In JULY 6,
2010, at 12:00 noon, at the front entrance of the First
Circuit Court Building, 777 Punchbowl Street, Honolulu,
Hawaii 96813. Terms of the sale are set forth in the
Notice published in the Honolulu Star Bulletin on
3/26/10, 4/2/10, and 4/9/10.

NOTICE IS HEREBY GIVEN THAT THIS ACTION IS AN
ATTEMPT TO COLLECT A DEBT, THAT ANY INFORMATION
OBTAINED WILL BE USED FOR THAT PURPOSE, AND THAT
THE DEBT MAY BE DISPUTED.

Inquiries should be directed to KARYN A. DOI, Esq., LEU &
OKUDA, Attys-at-Law, as attorney for Mortgagee, at The
Merchant House, 222 Merchant Street, Main Floor,
Honolulu, HI 96813.
(SA202200  6/14/10)

Rose Mae Rosales being duly sworn, deposes and says that she is a clerk, duly
authorized to execute this affidavit of Oahu Publications, Inc. publisher of The
Honolulu Star-Advertiser and MidWeek, that said newspapers are newspapers of
general circulation in the State of Hawaii, and that the attached notice is true notice as
was published in the aforementioned newspapers as follows:

Honolulu Star-Advertiser    **1**    times on:

06/14/2010

Midweek Wed.    **0**    times on:

_____ times on:

And that affiant is not a party to or in any way interested in the above entitled matter.

Rose Mae Rosales

Subscribed to and sworn before me this _14th_ day

of _Jun_ A.D. 20_10_    _Patricia K. Reese_

Patricia K. Reese, Notary Public of the First Judicial Circuit, State of Hawaii

My commission expires:    October 07, 2010

Ad #   0000202200

PATRICIA K. REESE
NOTARY
PUBLIC
Comm. No.
86-457
STATE OF HAWAII

LN: _____

Exhibit "15"



Department of Defense Manpower Data Center                    Apr-29-2010 11:51:56

Military Status Report
Pursuant to the Service Members Civil Relief Act

| ◄ Last Name | First/Middle | Begin Date | Active Duty Status | Active Duty End Date | Service Agency |
|---|---|---|---|---|---|
| CHUNG | HEE | Nov-03-1995 | Yes | NA | Army |

Upon searching the information data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the current status of the individual as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard).

*Mary M. Snavely-Dixon*

Mary M. Snavely-Dixon, Director
Department of Defense - Manpower Data Center
1600 Wilson Blvd., Suite 400
Arlington, VA 22209-2593

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Service Members Civil Relief Act (50 USC App. §§ 501 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual is on active duty, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service via the "defenselink.mil" URL http://www.defenselink.mil/faq/pis/PC09SLDR.html. If you have evidence the person is on active duty and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. §521(c).

If you obtain additional information about the person (e.g., an SSN, improved accuracy of DOB, a middle name), you can submit your request again at this Web site and we will provide a new certificate for that query.

This response reflects **active duty status** including date the individual was last on active duty, if it was within the preceding 367 days. For historical information, please contact the Service SCRA points-of-contact.

*More information on "Active Duty Status"*

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d)(1) for a period of more than 30 consecutive days. In the case of a member of the National Guard, includes service under a call to active service authorized by the President or the Secretary of Defense for a period of more than 30 consecutive days under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy TARs, Marine Corps ARs and Coast Guard RPAs. Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps) for a period of more than 30 consecutive days.

### *Coverage Under the SCRA is Broader in Some Cases*
Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate.

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification officer check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of SCRA extend beyond the last dates of active duty.

Those who would rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected.

WARNING: This certificate was provided based on a name and SSN provided by the requester. Providing an erroneous name or SSN will cause an erroneous certificate to be provided.
Report ID:3GP08MLG6A



Department of Defense Manpower Data Center                             Jul-08-2010 12:54:11



Military Status Report
Pursuant to the Service Members Civil Relief Act

| ◄ Last Name | First/Middle | Begin Date | Active Duty Status | Active Duty End Date | Service Agency |
|---|---|---|---|---|---|
| CHUNG | HEE JOON | Nov-03-1995 | Yes | NA | Army |

Based on the social security number you have provided, the above is the current status. However, the names, or partial Date of Birth, or both provided do not match the individual against whom the social security number is assigned.

Upon searching the information data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the current status of the individual as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard).

*Mary M. Snavely-Dixon*

---

Mary M. Snavely-Dixon, Director
Department of Defense - Manpower Data Center
1600 Wilson Blvd., Suite 400
Arlington, VA 22209-2593

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Service Members Civil Relief Act (50 USC App. §§ 501 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual is on active duty, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service via the "defenselink.mil" URL http://www.defenselink.mil/faq/pis/PC09SLDR.html. If you have evidence the person is on active duty and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. §521(c).

If you obtain additional information about the person (e.g., an SSN, improved accuracy of DOB, a middle name), you can submit your request again at this Web site and we will provide a new certificate for that query.

This response reflects **active duty status** including date the individual was last on active duty, if it was within the preceding 367 days. For historical information, please contact the Service SCRA points-of-

contact.

*More information on "Active Duty Status"*
Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d)(1) for a period of more than 30 consecutive days. In the case of a member of the National Guard, includes service under a call to active service authorized by the President or the Secretary of Defense for a period of more than 30 consecutive days under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy TARs, Marine Corps ARs and Coast Guard RPAs. Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps) for a period of more than 30 consecutive days.

*Coverage Under the SCRA is Broader in Some Cases*
Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate.

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of SCRA extend beyond the last dates of active duty.

Those who would rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected.

WARNING: This certificate was provided based on a name and SSN provided by the requester. Providing an erroneous name or SSN will cause an erroneous certificate to be provided.
Report ID:12OPEC4SVC