IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| HEEJOON CHUNG,<br><br>Plaintiff,<br><br>vs.<br><br>U.S. BANK, N.A., TRUSTEE, under Securitization Servicing Agreement dated as of December 1, 2005, Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates, Series 2005-11; and OCWEN LOAN SERVICING, LLC,<br><br>Defendants. | CIVIL NO. CV 1:16-00017 ACK-RLP (Contract)<br><br>**DECLARATION OF KEVIN FLANNIGAN** |

**DECLARATION OF KEVIN FLANNIGAN**

Pursuant to 28 U.S.C. § 1746I, Kevin Flannigan, hereby declare as follows:

1. I am of sound mind, over 18 years old, and am competent to make this declaration. Except where otherwise indicated, the following facts are true of own personal knowledge or from my review Ocwen Loan Servicing, LLC's files and records, and if called upon to do so, I could and would competently testify to the truth thereof under oath.

2. I am a Senior Loan Analyst for Ocwen Financial Corporation, whose indirect subsidiary is Ocwen Loan Servicing, LLC (together, "Ocwen"), the

982858v1/ 9615-5

servicer of loan no. XXXXXX3672 ("the Loan").  Ocwen services the loan on behalf of Defendant U.S. BANK, N.A., as Trustee under Securitization Servicing Agreement Dated as of December 1, 2005 Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates, Series 2005-11 ("U.S. Bank").

    3.    I make this declaration in support of U.S. Bank's opposition to Plaintiff Heejoon Chung's *Motion for Partial Summary Judgment, Filed November 9, 2016.*

    4.    From my employment with Ocwen, I am personally familiar with the business operations of Ocwen in general and with the loan related services that Ocwen offers.  In connection with my employment with Ocwen, I have become familiar with and regularly review Ocwen's records, loan histories, correspondence, and communication histories relating to loan accounts.  In addition, I have become familiar with the manner and process in which those records are kept and maintained.  I am aware that Ocwen relies upon the accuracy of said records in conducting its business activities, including in servicing of loans.  The records and documents referred to in this declaration constitute writings maintained, taken, or made in the regular or ordinary course of business of Ocwen, or its duly authorized agents, at or near the time of the act, condition, or event to which they relate by persons employed by Ocwen, or its agents, who had a business duty to accurately and completely take, make, and maintain such records and documents.  The entries contained in these records are made at or near the time

1

the event occurred by persons employed by Ocwen or its agents or predecessors in interest who have or had a business duty to make the entries as completely and accurately as possible.

5. Ocwen has custody and control of the business records related to the Loan. These records were prepared at or near the time of the act, condition or event described therein, and are made and kept in the ordinary course of business by persons who have a business duty to make such records on behalf of Ocwen. I have personally reviewed the business records as they relate to the Loan.

6. In or around September 2010, Ocwen entered an Asset Purchase Agreement with Barclays Bank PLC and Barclays Capital Real Estate Inc. A true and accurate copy of selected provisions of the Asset Purchase Agreement is attached hereto as Exhibit 1.

7. As a result of the Asset Purchase Agreement, Ocwen obtained servicing rights to the Loan from prior servicer HomeEq Servicing ("HomEq"), whose records Ocwen integrated into its own loan file upon the transfer. Ocwen relies upon the business records created by HomeEq integrated into its business records in its day-to-day operations servicing the Loan,  This integration of business records includes both integration of document images into Ocwen's document image repository (documents are maintained both in hard copy and electronic copy), which houses information collected from borrowers, as well as documents such as the note, mortgage, and title insurance policy, and integration of

data from prior servicers' systems into Ocwen's mortgage servicing application.

8. I also have knowledge of Ocwen's policies and procedures in place intended to prevent any errors or inadvertent violations of the Fair Debt Collection Practices Act ("FDCPA"), and similar state and federal laws.

9. Ocwen's records related to the Loan indicate that, on or about October 10, 2005, Plaintiff executed and delivered a promissory note in the amount of $424,000.00 to BNC Mortgage, Inc. (the "Note"). Plaintiff's Ex. B-1. To secure repayment of the Note, Plaintiff, as mortgagor, executed and delivered a mortgage in favor of Mortgage Electronic Registration Systems, Inc. as nominee for BNC Mortgage, Inc., and its successors or assigns dated October 10, 2005 (the "Mortgage", together with the Note, the "Loan"). Plaintiff's Ex. B-2. The Mortgage was recorded in the Office of the Assistant Registrar of the Land Court of the State of Hawai`i ("Land Court") as Document No. 3340804 and duly noted on Transfer Certificate of Title ("TCT") Number 775,009. *Id.*

10. On March 19, 2010, an assignment of mortgage from Mortgage Electronic Registration Systems, Inc., solely as nominee for BNC Mortgage, Inc., its successors and assigns to U.S. Bank was recorded in the Land Court. Plaintiff's Ex. D.

11. Plaintiff made consistent monthly Loan payments until February 2009. No payments have been made since March 2009. As a result of the Plaintiff's failure to pay, HomeEq Servicing sent a notice of default to Plaintiff,

3

which was dated April 15, 2009 ("Notice of Default").  Plaintiff's Ex. C.  The Notice of Default stated: "[y]ou are hereby provided with notice that you are in default under the terms and conditions of your Note […].  If your Account is not brought current within sixty-five (65) days of the date of this letter,…HomEq will, without further demand, accelerate the maturity date of the Account and declare the total balance immediately due and payable." *Id.*

12.   HomeEq, on behalf of U.S. Bank, conducted a non-judicial foreclosure on the Property.  The *Notice of Mortgagee's Non-Judicial Foreclosure Under Power of Sale* was posted on the Property on March 24, 2010.  *See* Plaintiff's Ex. E, PDF pg. 102.

13.   The public auction was conducted on July 8, 2010 and the Mortgagee's Affidavit of Foreclosure Sale was recorded in the Land Court on August 3, 2010.  Plaintiff's Ex. E.

14.   At the time Ocwen began servicing the Loan, the records reflected that the Loan was in default, had been non-judicially foreclosed, and was in real-estate owned ("REO") status.  A true and correct but redacted copy of the relevant servicing notes are attached hereto as Exhibit 2.  After communications with its foreclosure counsel, Ocwen understood that the quitclaim deed to U.S. Bank could not be recorded because the Assignment of Mortgage did not include additional verbiage needed to fully identify the trust as reflected in the Affidavit of Sale.  *Compare* Plaintiff's Ex. E *with* Plaintiff's Ex. D.  Upon information and belief, it

4

appears Ocwen determined it was likely that the foreclosure would need to be re-done. Ex. 2 at D000751.

15. Although the deed could not be recorded and the Loan would likely need to be re-foreclosed, the Loan should have remained in REO status pursuant to Ocwen's policies and procedures until the previous non-judicial foreclosure was rescinded or otherwise resolved.

16. It is Ocwen's policy to halt collections on foreclosed loans. In accordance with that policy, a property acquired through any foreclosure sale is transferred into Ocwen's REO Department and the REO status is noted in Ocwen's system. When in REO status, "no communication" and "no correspondence" indicators are also placed on the loan. This ensures that no further collection activities will occur.

17. Despite this policy, on May 18, 2011 C.M. Radhika, a member of Ocwen's non-judicial foreclosure team, mistakenly changed the Loan status from a "non judicial module as per new HI law and reopening in judicial module." Ex. 2 at D000751. As a result of this error, collection efforts on the Loan were mistakenly re-initiated, resulting in Ocwen sending letters to Plaintiff in 2015 demanding payment on the Loan.

18. On this Loan, the proper REO notations on the Loan would have remained in Ocwen's system had C.M. Radhika followed Ocwen's policy. No collection efforts would have been attempted, and no collection letters would have

been sent to Plaintiff in 2015.

17.  Once Ocwen was notified of the error, it corrected by making the proper notations on the Loan, which ceased all further communications.

I, Kevin Flannigan, declare under penalty of law that the foregoing is true and correct.

Executed on this 27th day of February 2017, in Houston, Texas.

Name: _____
Kevin Flannigan