FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

*Apr 17, 2017*

SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

_____
                                        )
HEEJOON CHUNG,                          )
                                        )
                    Plaintiff,          )
                                        )
v.                                      ) Civ. No. 16-00017 ACK-RLP
                                        )
U.S. BANK, N.A., Trustee, under         )
Securitization Servicing Agreement      )
dated as of December 1, 2005,           )
Structured Asset Investment Loan        )
Trust Mortgage Pass-Through             )
Certificates, Series 2005-11; and       )
OCWEN LOAN SERVICING, LLC,              )
                                        )
                    Defendants.         )
_____)


<u>ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS</u>
<u>ON COUNT II OF THE COMPLAINT AND GRANTING IN PART AND DENYING IN</u>
<u>PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

# TABLE OF CONTENTS

PROCEDURAL BACKGROUND...........................................4

FACTUAL BACKGROUND..............................................7

STANDARD.......................................................9

    I.   Judgment on the Pleadings ...............................9

    II.  Summary Judgment ......................................11

DISCUSSION....................................................13

    I.   Defendants' Motion for Judgment on the Pleadings as to Count II of the Complaint ............................13

    a. Whether the Claim is Time-Barred Under Haw. Rev. Stat. Chapter 480........................................13

    b. Whether the SCRA Provides a Cognizable Basis for Plaintiff's UDAP Claim.............................26

    c. Whether Count II is Insufficiently Pled to the Extent it is Based on the 2015 Communications or Any Other Conduct...........................................31

    II.  Plaintiff's Motion for Partial Summary Judgment .......36

    a. FDCPA Claim........................................36

      i. Whether Plaintiff Establishes that the Loan was a Personal Debt..................................37

      ii. Whether Ocwen is a "Debt Collector"............41

      iii. Whether Defendants Violated the FDCPA..........49

        1. Whether Defendants Violated the FDCPA When they Demanded Different Amounts Owed on the Same Date .......................................49

        2. Whether Defendants' Alleged "Gamesmanship" in the Instant Litigation Violated the FDCPA ....52

        3. Whether Defendants Violated the FDCPA for Sending Plaintiff Letters After They Knew He was Represented by an Attorney ...............54

4. Whether Defendants Violated the FDCPA by Improperly Charging Late Fees, Insurance Charges, and Attorney's Fees ................58

5. Whether Defendants Violated the FDCPA by Reporting False Credit Information ..........58

6. Whether Defendants Violated the FDCPA by Attempting to Collect on the Alleged Debt, Even Though They Knew it was Time-Barred .........59

    iv. Whether the Bona Fide Error Defense Applies.....62

  b. UDAP Claim..........................................63

  c. Negligence and Negligent Misrepresentation Claims....65

CONCLUSION....................................................65

For the reasons set forth below, the Court GRANTS Defendants' Motion for Judgment on the Pleadings on Count II of the Complaint.  The Court DISMISSES Count II of the Complaint WITHOUT PREJUDICE.  The Court GRANTS IN PART and DENIES IN PART Plaintiff Heejoon Chung's Motion for Partial Summary Judgment.

## PROCEDURAL BACKGROUND

On January 18, 2016, Plaintiff Heejoon Chung ("Plaintiff") filed a Complaint for Damages and Injunctive Relief ("Complaint") against Defendants U.S. Bank, N.A. Trustee, Under Securitization Servicing Agreement dated as of December 1, 2005, Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates, Series 2005-11 ("U.S. Bank") and Ocwen Loan Servicing, LLC ("Ocwen," and together with U.S. Bank, "Defendants").  ECF No. 1.  Plaintiff asserts that Defendants made false and misleading representations in connection with a non-judicial foreclosure on real property located at 91-743 Ihipehu Street, Ewa Beach, Hawaii 96706 ("Property"), and later attempted to collect a debt from him despite purporting to release him from such debt upon foreclosure.  Id. ¶¶ 12, 27, 30 63, 67.  Plaintiff alleges: (1) violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692; (2) unfair or deceptive acts or practices ("UDAP") in violation of the Hawaii Revised Statutes ("Haw. Rev. Stat."), Chapter 480 and the

Servicemembers Civil Relief Act ("SCRA"); (3) negligent misrepresentation; and (4) negligence.  Id. ¶¶ 48-70.

In Count I of his Complaint, Plaintiff predicates his FDCPA claim on conduct occurring within the year prior to the filing of the case.  Id. ¶ 50.  Plaintiff alleges violations of 15 U.S.C. §§ 1692c-g.  Id. ¶¶ 48-56.  In Count II of his Complaint, Plaintiff alleges UDAP violations under provisions of Haw. Rev. Stat. Chapter 480 and the SCRA based on events in 2005 and 2010.  Id. ¶¶ 59-60.  Plaintiff specifically predicates his UDAP claim on the following statutes: (1) 50 U.S.C. § 521; (2) Haw. Rev. Stat. § 667-1, et seq.; (3) Haw. Rev. Stat. § 480D-1, et. seq.; (4) Haw. Rev. Stat. § 443B-1, et. seq.; (5) Haw. Rev. Stat. § 480-1, et seq.; (6) Haw. Rev. Stat. § 480-2; and (7) Haw. Rev. Stat. § 480-12.  Id. ¶¶ 57-61.  Defendants filed an Answer to the Complaint on February 23, 2016 responding to the allegations in the Complaint and asserting various affirmative defenses.  ECF No. 13.

On July 11, 2016, Plaintiff filed a Motion for Judgment on the Pleadings and Memorandum in Support of Motion "based upon the failure of Defendants to truthfully respond to the allegations of the Complaint."  ECF No. 24-1 at 1.  The Court denied Plaintiff's Motion on September 6, 2016.  ECF No. 32.  On September 9, 2016, Defendants filed a Motion for Leave to file a First Amended Answer, Counterclaim, and Third Party

Complaint. ECF No. 33. Plaintiff opposed Defendants' request. ECF No. 35. Defendants filed a First Amended Answer, Counterclaim, and Third Party Complaint on October 5, 2016. ECF No. 37. On November 1, 2016, the Magistrate Judge entered an order granting in part and denying in part Defendants' Motion for Leave to File a First Amended Answer, Counterclaim, and Third Party Complaint. ECF No. 43.

On November 9, 2016, Defendants filed a Motion for Judgment on the Pleadings on Count II of the Complaint ("Defendants' Motion"). ECF No. 48. On February 27, 2017, Plaintiff filed an Opposition to Defendants' Motion for Judgment on the Pleadings ("Plaintiff's Opposition"). ECF No. 66. On March 6, 2017, Defendants filed their Reply to Plaintiff's Opposition ("Defendants' Reply"). ECF No. 70.

On March 8, 2017, the Court ordered supplemental briefing on whether 50 U.S.C. § 3936 would apply to the statute of limitations issue raised in Defendants' Motion. ECF No. 71. On March 14, 2017, both parties filed Memorandum addressing this issue. ECF Nos. 73, 74.

Separately, on November 9, 2016, Plaintiff filed a Motion for Partial Summary Judgment ("Plaintiff's Motion") on all claims, reserving the damages determination (ECF No. 45), along with a Concise Statement of Facts in support of his Motion ("Pl.'s CSF in Supp."). ECF No. 46. On February 27, 2017,

Defendants filed an Opposition to Plaintiff's Motion for Partial Summary Judgment ("Defendants' Opposition") (ECF No. 67), along with a Separate and Concise Statement of Facts ("Defs.' CSF in Opp'n"). ECF No. 68. On March 6, 2017, Plaintiff filed a Reply to Defendants' Opposition ("Plaintiff's Reply"). ECF No. 69.

The Court held a hearing on Defendants' and Plaintiff's Motions on March 20, 2017 at 11:00 a.m. At the hearing, the Court asked Defendants to file a full version of the Asset Purchase Agreement, which was Exhibit 1 of Defendants' Separate and Concise Counterstatement of Facts. Defendant thereafter filed the full agreement. ECF No. 76. The Court then gave Plaintiff an opportunity to respond. ECF No. 77. Plaintiff filed a Memorandum responding to the full document on March 24, 2017. ECF No. 78.

## FACTUAL BACKGROUND

On October 4, 2005, Plaintiff purchased the Property. Complaint ¶ 12. The purchase was made with funds obtained from BNC Mortgage, Inc. ("BNC"), which was a loan secured by a first mortgage on the Property and later transferred to U.S. Bank on March 10, 2010. Complaint ¶ 13; Pl.'s CSF in Supp., Exs. B1, B2, D. Plaintiff alleges, upon information and belief, that there were various irregularities in the loan process with BNC, including failure to provide proper disclosures, an improper signing location, and failure to provide copies of the loan

documents.  Complaint ¶¶ 16-19, 22.  Several days after closing,
Plaintiff entered into a second mortgage loan on the Property.
Id. ¶ 21.

HomEq Servicing ("HomEq") originally handled the loan
servicing.  Pl.'s CSF in Supp., Ex. C.  On April 15, 2009, HomEq
sent Plaintiff a letter advising him of his default on the loan,
which Plaintiff did not receive.  Complaint ¶ 24; Pl.'s CSF in
Supp., Chung Decl. ¶ 18.

Plaintiff alleges that the mortgage was non-judicially
foreclosed through a public auction conducted on July 8, 2010.
Complaint ¶ 27; Pl.'s CSF in Supp., Ex. E ¶ 5j.  A Mortgagee's
Affidavit of Foreclosure Under Power of Sale ("Affidavit") was
recorded in the Land Court on August 3, 2010.  Complaint ¶ 27;
Pl.'s CSF in Supp., Ex. E.  The Affidavit erroneously stated
that Plaintiff was not on active military duty at the time of
foreclosure when, in fact, a report attached as an exhibit to
the affidavit indicates that he was on active military duty from
November 3, 1995 with no end date.  Complaint ¶¶ 31-32, Pl.'s
CSF in Supp., Ex. E.  Plaintiff was stationed in South Carolina
in 2010 and alleges that he did not receive notice of the non-
judicial foreclosure during that time.  Complaint ¶ 28.

Due to a problem with recording the deed, however,
title to the Property never passed to U.S. Bank but remained in

Plaintiff's name.  Pl.'s CSF in Supp., Chung Decl. ¶ 33; Defs.'
CSF in Opp'n, Flannigan Decl. ¶ 14.

Ocwen began servicing the loan in 2010.  Defs.' CSF in
Opp'n, Ex. 1.  In July 2015, Ocwen sent Plaintiff letters
stating that the loan was delinquent as of March 2, 2009 and
that the current amount due on the loan exceeded $216,000.
Complaint ¶¶ 36-38; Pl.'s CSF in Supp., Exs. G, H.  Shortly
thereafter, Plaintiff contacted an attorney and first learned of
the non-judicial foreclosure.  Pl.'s CSF in Supp., Chung Decl. ¶
23.

Plaintiff was on "Active Duty Status" in the U.S. Army
from November 3, 1995 until November 2015.  Complaint ¶¶ 3, 11;
Plaintiff's Reply, Exhibit A (Plaintff's Depo.) at 198.

**STANDARD**

**I.   Judgment on the Pleadings**

Under Federal Rule of Civil Procedure 12(c), "[a]fter
the pleadings are closed—but early enough not to delay trial—a
party may move for judgment on the pleadings."  Judgment on the
pleadings is properly granted "when, accepting all factual
allegations in the complaint as true, there is no issue of
material fact in dispute, and the moving party is entitled to
judgment as a matter of law."  Chavez v. United States, 683 F.3d
1102, 1108 (9th Cir. 2012) (citation and original alteration
omitted).

Analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy. Id. The Court must therefore assess whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Harris v. Cty. of Orange, 682 F.3d 1126, 1131 (9th Cir. 2012) (Iqbal applies to Rule 12(c) motions because Rule 12(b)(6) and Rule 12(c) motions are functionally equivalent).

Judgment on the pleadings under Rule 12(c) is limited to material included in the pleadings, unless the Court elects to convert the motion into one for summary judgment. Yakima Valley Mem'l Hosp. v. Dep't of Health, 654 F.3d 919, 925 n.6 (9th Cir. 2011). Rule 12(d) gives the Court "discretion to accept and consider extrinsic materials offered in connection with these motions, and to convert the motion to one for summary judgment when a party has notice that the district court may look beyond the pleadings." Hamilton Materials, Inc. v. Dow Chem. Corp., 494 F.3d 1203, 1207 (9th Cir. 2007).

The Court must accept as true the facts as pled by the non-movant, and will construe the pleadings in the light most

favorable to the nonmoving party.  U.S. ex rel. Cafasso v. Gen.
Dynamics C4 Sys., Inc., 637 F.3d 1047, 1053 (9th Cir. 2011);
Doyle v. Raley's Inc., 158 F.3d 1012, 1014 (9th Cir. 1998).
Additionally, mere conclusory statements in a complaint or
"formulaic recitation[s] of the elements of a cause of action"
are not sufficient.  Twombly, 550 U.S. at 555.  Thus, the Court
discounts conclusory statements, which are not entitled to a
presumption of truth, before determining whether a claim is
plausible.  Iqbal, 556 U.S. at 678.  However, "dismissal with
prejudice and without leave to amend is not appropriate unless
it is clear on de novo review that the complaint could not be
saved by amendment."  Harris v. Cty. of Orange, 682 F.3d 1126,
1131 (9th Cir. 2012) (citation omitted).

**II.  Summary Judgment**

        Summary judgment is proper where there is no genuine
issue of material fact and the moving party is entitled to
judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Rule 56(a)
mandates summary judgment "against a party who fails to make a
showing sufficient to establish the existence of an element
essential to the party's case, and on which that party will bear
the burden of proof at trial."  Celotex Corp. v. Catrett, 477
U.S. 317, 322 (1986); see also Broussard v. Univ. of Cal. at
Berkeley, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (citing Celotex, 477 U.S. at 323); see also Jespersen v. Harrah's Operating Co., 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56 [(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586-87 (1986) (citation and internal quotation marks omitted); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." In re Barboza, 545 F.3d 702, 707 (9th Cir. 2008) (citing Anderson, 477 U.S. at 248). When considering the evidence on a motion for summary judgment, the court must draw all reasonable

inferences on behalf of the nonmoving party. Matsushita Elec. Indus. Co., 475 U.S. at 587; see also Posey v. Lake Pend Oreille Sch. Dist. No. 84, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor").

## DISCUSSION

I.  **Defendants' Motion for Judgment on the Pleadings as to Count II of the Complaint**

a. **Whether the Claim is Time-Barred Under Haw. Rev. Stat. Chapter 480**

Defendants argue that Plaintiff's claims under Haw. Rev. Stat. § 480—based on the origination of his loan in October 2005 and representations made about Plaintiff's military status during the non-judicial foreclosure conducted in August 2010—are time barred.[1]   Under Haw. Rev. Stat. § 480-24, "Any action to

---

[1] Plaintiff's complaint pleads a UDAP claim related both to the 2005 mortgage transaction and the 2010 misrepresentation. Complaint ¶¶ 59-60.  In Plaintiff's Opposition, he states that his UDAP claim does not relate to the 2005 mortgage transaction. ECF No. 66 at 5.  However, at the Court's hearing, Plaintiff stated that he was not pursuing this claim on summary judgment but reserved it for trial.  The Court, therefore, will not dismiss Plaintiff's UDAP claim to the extent it is predicated on the 2005 mortgage.

In his Opposition, Plaintiff also claims that his UDAP claim includes allegations that: (1) Defendants did not properly notify him of the foreclosure; and (2) collection demands from Defendants in 2015 improperly conflicted with each other and with the Affidavit that the loan was satisfied and released. ECF No. 66 at 5, 20.  Plaintiff also incorporates evidence from his Motion for Partial Summary Judgment for purposes of his Opposition to Defendants' Motion.  ECF No. 66 at 1.

(continued . . . )

enforce a cause of action arising under [Chapter 480] shall be time barred unless commenced within four years after the cause of action accrues . . . a cause of action for a continuing violation is deemed to accrue at any time during the period of the violation."

Defendants argue that the occurrence rule, which states that a cause of action accrues upon the occurrence of the alleged violation, applies. On the other hand, Plaintiff argues that the discovery rule, which states that a cause of action accrues when the plaintiff discovers the harm, applies. The Court holds that a UDAP cause of action accrues, pursuant to Haw. Rev. Stat. § 480-24, four years from the date of the occurrence of the violation, as opposed to Plaintiff's discovery of the violation. See McDevitt v. Guenther, 522 F. Supp. 2d 1272, 1289 (D. Haw. 2007) (Kay, J.) ("The Court holds that the applicable rule governing the statute of limitations for claims arising under Haw. Rev. Stat. § 480-2 is the occurrence rule."); see also In re Sumbillo, No. AP 1490052, 2015 WL 5162466, at *2 (D. Haw. Sept. 1, 2015) (noting that "[j]udges in this District Court for the past thirty-five years [have applied the occurrence rule] in determining when a cause of action accrues

_____

As discussed herein, the Court will not consider allegations and facts that have not been pled in the complaint in deciding the instant Rule 12(c) motion.

under Chapter 480"); Lowther v. U.S. Bank N.A., 971 F. Supp. 2d 989, 1003 (D. Haw. 2013) (applying the occurrence rule); Rundgren v. Bank of N.Y. Mellon, No. CIV 10-00252 JMS/LEK, 2010 WL 4066878, at *6 (D. Haw. Oct. 14, 2010) (same).

The Court is not persuaded by Plaintiff's argument that the discovery rule is now the standard in Hawaii. Plaintiff argues that two cases invoking the discovery rule apply here: Schmidt v. HSC, Inc., 131 Haw. 497, 503, 319 P.3d 416, 422 (2014) and Leibert v. Fin. Factors, Ltd., 71 Haw. 285, 286, 788 P.2d 833, 835 (1990). However, neither case considered a UDAP claim under Chapter 480; Schmidt involved a Hawaii law related to fraudulent transfer, and Leibert involved a Hawaii law related to fraudulent concealment. In addition, Plaintiff's argument—that a case cited by Defendants, Reyes v. HSBC Bank USA, Nat. Ass'n, 135 Haw. 407, 353 P.3d 410 (Haw. Ct. App. 2015), is unpersuasive because it does not discuss the holding in Schmidt—is of no consequence because Schmidt does not apply here.

Plaintiff also relies on February 5, 2016 and July 11, 2016 orders and a hearing transcript in Kane v. Deutsche Bank Nat. Trust Co., Adv. No. 15-90045 (Bankr. D. Haw. 2016). The Kane court held that the statute of limitations does not bar a claim under Haw. Rev. Stat. § 480-12, a provision which voids a contract that violates Chapter 480, because it is a defense and

to bar such claims would result in a void contract becoming "un-void" due to the mere lapse of time. However, the Kane court did not rely on any authority for this assertion and also stated that it was merely predicting how the Hawaii state courts would hold. In addition, contrary authority exists. See Rundgren v. Bank of N.Y. Mellon, Civ. No. 10-00252 JMS/LEK, 2010 WL 4066878, at *6 (D. Haw. Oct. 14, 2010) ("[Section] 480-24's four-year statute of limitations, which extends to any action to enforce a cause of action arising under this chapter, also applies to § 480-12." (internal quotation marks and original alteration omitted)).[2]  The Court, therefore, declines to follow Kane and holds that the occurrence rule applies.

Because the occurrence rule applies, the Court must determine when the violation occurred. A violation does not occur until all the elements of a claim have occurred, including injury and damages. In re Sumbillo, Civ. No. 15-00125 JMS-BMK, 2015 WL 5162466, at *3 (D. Haw. Sept. 1, 2015). Without citing any authority, Plaintiff argues that injury and damage did not occur until after Plaintiff received the demand letters from

---

[2] Plaintiff also argues that Pac. Concrete Fed. Credit Union v. Kauanoe, 62 Haw. 334, 614 P.2d 936 (1980) applies here. In Pac. Concrete, the Hawaii Supreme Court held that the Truth in Lending Act ("TILA") claims could be brought via recoupment even though the statute of limitations had run. However, the Court declines to follow Pac. Concrete because the current case involves UDAP claims under Chapter 480 of the Haw. Rev. Stat. and not TILA.

Ocwen in 2015 and incurred damages in determining his rights. This, however, would be the date Plaintiff discovered the injury and not the date when the injury and damages occurred.

The Court finds that any injury and damages in this case would have occurred on the only two dates pled in Plaintiff's complaint related to the UDAP claim—the date of the loan transactions on October 4, 2005 and the Affidavit, which was filed on August 3, 2010. See id. at *3 ("[C]ontrary to Deutsche Bank's argument that the injury and damages both occurred when the notice was published—the Sumbillos could not have been injured or damaged at least until the date of the auction on August 26, 2010."); Uyeshiro v. Irongate Azrep BW LLC, Civ. No. 13-00043 ACK-BMK, 2014 WL 414219, at *15 (D. Haw. Feb. 3, 2014) (Kay, J.) (stating that the conduct at issue occurred when the sales contract was executed); Ramos v. Chase Home Fin., 810 F. Supp. 2d 1125, 1128, 1139 (D. Haw. 2011) (holding that the claim accrued on the date the loan transaction was consummated).[3] Because Plaintiff did not file his complaint

---

[3] Plaintiff incorrectly asserts that In re Sumbillo, Civ. No. 15-00125 JMS-BMK, 2015 WL 5162466, at *3 (D. Haw. Sept. 1, 2015) states that the claim did not accrue until Plaintiff learned of the unfair and deceptive acts.

Plaintiff also alleges that there were additional damages that occurred later, such as Plaintiff's forced retirement, which should change the time from when the claim starts to accrue. In addition, Plaintiff states that the false affidavit, which has never been withdrawn, continues to harm him. However,
(continued . . . )

until January 19, 2016, approximately 10 years and 3 months

after the October 2005 loan transaction and five years and six

months after the July 2010 foreclosure, the claim is time-barred

unless there is a basis for tolling the statute of limitations.

Plaintiff argues that the limitations period should be

tolled because Defendants failed to serve Plaintiff with notice

of foreclosure, and Plaintiff did not learn of the foreclosure

of his home and the Affidavit stating that he was not in the

military until 2015.  Plaintiff further alleges that when

Defendants sent a letter to Plaintiff demanding payment in 2015,

they continued to conceal their foreclose proceedings.

Plaintiff cites to Rundgren v. Bank of N.Y. Mellon, 777 F. Supp.

2d 1224 (D. Haw. 2011) to support his claim.  In Rundgren, the

Court held that equitable tolling may be appropriate in a Haw.

Rev. Stat. § 480 claim where there has been fraudulent

concealment.  See id. at 1231 (construing "HRS Ch. 480 in

accordance with federal cases interpreting similar federal

_____

because Plaintiff alleged discrete acts in 2005 and 2010, the
effect of which he continues to experience, and not a continuing
pattern and course of conduct, the date from which the statute
of limitations starts to accrue should not be modified.  See
Flynn v. Marriott Ownership Resorts, Inc., 165 F. Supp. 3d 955,
966 (D. Haw. 2016) (holding that because Plaintiffs alleged a
discrete act, the effect of which Plaintiffs continue to
experience, and not a continuing pattern and course of conduct,
the continuing violation doctrine did not apply and the date
from which the statute of limitations began to accrue did not
change based on this later conduct).

antitrust laws such as 15 U.S.C. § 15h, . . . [such that] the statute of limitations on a HRS Ch. 480 claim may be tolled under the equitable tolling doctrine of fraudulent concealment").

Equitable tolling may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim.  See O'Donnell v. Vencor, Inc., 465 F.3d 1063, 1068 (9th Cir. 2006) ("Equitable tolling is generally applied in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." (internal quotation marks and citation omitted)).  Plaintiff must allege facts that, if proven, would support a finding that Defendant took affirmative steps to conceal the causes of action from Plaintiff.  Lowther v. U.S. Bank N.A., 971 F. Supp. 2d 989, 1002 (D. Haw. 2013). Plaintiff must also allege facts that show his due diligence in trying to uncover the facts.  Rutledge v. Boston Woven Hose & Rubber Co., 576 F.2d 248, 250 (9th Cir. 1978).  A plaintiff must plead with particularity the circumstances surrounding the concealment.  389 Orange St. Partners v. Arnold, 179 F.3d 656, 662 (9th Cir. 1999); Rutledge, 576 F.2d at 250.

The facts pled in Plaintiff's Complaint do not plead—
much less with particularity—any basis for fraudulent
concealment.  The Complaint does not allege any facts related to
an allegation that Defendants actively hid the foreclosure from
Plaintiff or prevented Plaintiff from discovering the alleged
claim following a diligent inquiry.  Defendants' failure to
notify Plaintiff of the non-judicial foreclosure does not
constitute an affirmative action of concealment.  Indeed, on
April 15, 2009, HomEq sent Plaintiff a letter to his last known
address stating that Plaintiff was in default and that the
mortgage on the Property would be foreclosed if HomEq did not
receive payment from him within 65 days.  Complaint, Ex. C.
Further, Defendants published notice of the pending foreclosure,
hardly concealing it.  Remarkably, the Affidavit erroneously
stated that Plaintiff was not in the military despite the
Affidavit's attachment showing that Plaintiff was in fact in the
military.

Moreover, the fact that "Plaintiff sought to obtain
[copies of the original loan] documents from Defendants without
success" does not provide the necessary facts to plead a claim
of fraudulent concealment with particularity because it does not
allege that Defendants were actively trying to conceal documents
from the Plaintiff.  ECF No. 66 at 12.  Plaintiff also has not
alleged facts detailing a diligent inquiry.

Therefore, the Court finds that Plaintiff has failed to allege facts that would justify tolling the statute of limitations on grounds of fraudulent concealment. <u>See</u> <u>Rundgren v. Bank of N.Y. Mellon Corp.</u>, 637 F. App'x 404, 405 (9th Cir. 2016) ("Rundgren has not shown that Defendants actively concealed the material elements of her claim or prevented her from discovering her claim following a duly diligent inquiry . . . Accordingly, Rundgren's 2010 action—brought more than five years after the accrual of her Chapter 480 claim—is time-barred.").

However, the Court finds that Plaintiff can toll the statute of limitations under the SCRA.[4] The SCRA was passed "to enable [servicemembers] to devote their entire energy to the defense needs of the Nation." 50 U.S.C. § 3902(1). To accomplish this objective, the SCRA includes a provision for tolling statutes of limitations. <u>See</u> 50 U.S.C. § 3936(a). This provision states:

> The period of a servicemember's military service may not be included in computing any period limited by law, regulation, or order for the bringing of any action or proceeding in a court, or in any board, bureau, commission, department, or other agency of a State (or political subdivision of a State) or the United States by or against the

---

[4] On March 8, 2017, the Court issued a minute order asking the parties for supplemental briefing on whether 50 U.S.C. § 3936 applies. ECF No. 71.

servicemember or the servicemember's heirs,
executors, administrators, or assigns.

Id.

The language of the statute is "unambiguous and
unequivocal." Lowe v. United States, 79 Fed. Cl. 218, 224-25
(2007). The "express terms of the [SCRA] make certain that the
tolling of the statute of limitations is unconditional."
Bickford v. United States, 656 F.2d 636, 639 (Ct. Cl. 1981); see
also Romualdo P. Eclavea, Tolling Provision of Soldiers' and
Sailors' Civil Relief Act (50 App. U.S.C.A. § 525), 36 A.L.R.
Fed. 420 (1978) (collecting case law from various jurisdictions
recognizing the mandatory nature of the Act's tolling provision
and construing this provision liberally in accordance with the
Act's remedial nature).

The only real issue triggering the SCRA's tolling
provision is exactly what constitutes military service. Lowe,
79 Fed. Cl. at 225. Military service is defined as a "member of
the Army, Navy, Air Force, Marine Corps, or Coast Guard . . .
[in] active duty," which, in turn, "means full-time duty in the
active military service of the United States." 10 U.S.C. §
101(d)(1); 50 U.S.C. § 3911. The term "period of military
service" means "the period beginning on the date on which a
servicemember enters military service and ending on the date on
which the servicemember is released from military service or

dies while in military service." 50 U.S.C. § 3911.   In

addition, the SCRA's tolling provision can be applied to members

of the armed services who spend their entire careers working for

the military.  Griffin v. Navient Sols., Inc., No. 15CV1818 DMS

(DHB), 2016 WL 5719831, at *4 (S.D. Cal. Sept. 30, 2016)

(holding that plaintiff was entitled to tolling during the

entirety of his active duty status in the U.S. Navy, even though

plaintiff was characterized as "career military").  The parties

do not dispute that Plaintiff was on "Active Duty Status" in the

U.S. Army from November 3, 1995 until November 2015.  Therefore,

Plaintiff fits within the definition of the statute.

        Defendants agree that the SCRA applies but argue, for

the first time in their supplemental memorandum, that laches

independently bars the claims.  The SCRA does not prevent laches

from barring a servicemember's claims, as laches is a limitation

on stale claims entirely independent of any applicable statutes

of limitations.  Crews v. Prudential Ins. Co. of Am., Civ. No.

14-00009 ACK-RLP, 2015 WL 1646935, at *4 n. 4 (D. Haw. Apr. 13,

2015) (Kay, J.).

        The "defenses of laches," however, "may not be

asserted by a motion to dismiss, but should be set forth

affirmatively in defendant's answer."  Dirk Ter Haar v. Seaboard

Oil Co. of Delaware, 1 F.R.D. 598, 598 (S.D. Cal. 1940); see

also Lopez v. Fed. Nat. Mortg. Ass'n, No. CV 13-04782 MMM AGRX,

2013 WL 7098634, at *9 (C.D. Cal. Oct. 8, 2013) ("[A]ffirmative defenses should be raised in responsive pleadings, not in pre-answer motions brought under Rule 12(b).")  "Under the Federal Rules of Civil Procedure, a party, with limited exceptions, is required to raise every defense in its first responsive pleading, and defenses not so raised are deemed waived." Morrison v. Mahoney, 399 F.3d 1042, 1046 (9th Cir. 2005).

A defendant may raise an affirmative defense for the first time in a motion for judgment on the pleadings "'only if the delay does not prejudice the plaintiff.'"  Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 713 (9th Cir. 2001) (quoting Magana v. Com. of the N. Mariana Islands, 107 F.3d 1436, 1446 (9th Cir. 1997)).  The failure to raise a defense is prejudicial if the party against whom the issue is raised may have tried its case differently or advanced distinct legal arguments against the issue.  Sram Corp. v. Shimano, Inc., 25 F. App'x 626, 629 (9th Cir. 2002).

Defendants in their Answer assert certain affirmative defenses and then incorporate all of the defenses listed in Rule 8, which include laches.  The Court finds that this is insufficient.  See Mullaney v. Hilton Hotels Corp., 634 F. Supp. 2d 1130, 1160 (D. Haw. 2009) (Kay, J.) (holding that Defendant's assertion of "any and all defenses under Fed. R. Civ. P. 8(c) as they may apply" was "not in keeping with notice requirements of

federal court pleadings" and was "not sufficient to properly

raise any specific affirmative defense").  Because Plaintiff did

not have notice of this defense, the opportunity to respond, and

would likely have advanced distinct legal arguments against the

issue, the Court declines to exercise its discretion to consider

this issue.[5]  Therefore, the Court finds that the SCRA's tolling

---

[5] Even if the Court were to consider the equitable defense
of laches, it finds that laches would not apply here.  For the
doctrine of laches to apply, two components must be present: (1)
unreasonable delay by the plaintiff in bringing his claim; and
(2) that delay must have resulted in prejudice to defendant.
Crews, 2015 WL 1646935, at *4-5.
        "'Delay is reasonable if the claim was brought without
undue delay after plaintiff knew of the wrong or knew of facts
and circumstances sufficient to impute such knowledge to him.'"
Id. at *5 (quoting Ass'n of Apartment Owners of Newton Meadows
v. Venture 15, Inc., 167 P.3d 225, 284 (Haw.2007) (quoting Adair
v. Hustace, 640 P.2d 294, 300 (Haw. 1982))).  Plaintiff was
deployed to Iraq in December 2007 and returned in 2009.
Complaint ¶ 3.  He was then stationed in South Carolina.  Id.
Plaintiff was then deployed to Afghanistan in October 2013 and
returned in July 2014.  Id.  Plaintiff did not find out about
the foreclosure until 2015.  Id. ¶ 33.  Plaintiff filed his
Complaint in January 2016.  Given Plaintiff's military service
and assignment to duty stations away from Hawaii, the Court does
not find Plaintiff's delay unreasonable under the doctrine of
laches.  Cf. Crews, 2015 WL 1646935, at *6-7 (holding that
laches applied when Plaintiff was notified of his claim ten
years prior to filing suit and Plaintiff offered no explanation
for his delay).
        In addition, Defendant was not prejudiced by this delay.
"'Common but by no means exclusive examples of such prejudice
are loss of evidence with which to contest plaintiff's claims,
including the fading memories or deaths of material witnesses,
changes in the value of the subject matter, changes in
defendant's position, and intervening rights of third parties.'"
Id. at *5 (quoting Ass'n of Apartment Owners of Newton Meadows
v. Venture 15, Inc., 167 P.3d 225, 284 (Haw.2007) (quoting Adair
v. Hustace, 640 P.2d 294, 300 (Haw. 1982))).  Plaintiff only
                                        (continued . . . )

provision applies, and Plaintiff's Count II claims are not time
barred.

### b. Whether the SCRA Provides a Cognizable Basis for Plaintiff's UDAP Claim

Defendants argue that Plaintiff cannot state a UDAP
claim based on an alleged violation of the SCRA arising out his
military status at the time of the foreclosure because he was
not subject to the protections of the SCRA.  Plaintiff's
complaint alleges only a violation of 50 U.S.C. § 3931,[6] which is
titled "Protection of Servicemembers Against Default Judgments"
and "applies to any civil action or proceeding in which the
defendant does not make an appearance."[7]  This section lists,

_____

brought the suit approximately one year and a half after the
limitations period.  It is unlikely that an evidentiary gap or
economic harm would grow much greater during that time.
Defendants argue that they were prejudiced by loss of evidence
because neither of them was actively involved in the
foreclosure.  However, this is not prejudice arising from any
alleged delay from Plaintiff.  In addition, Defendants argue
that because neither defendant played an active role in the
foreclosure, it would be inequitable for either to pay damages
for the prior servicers or its counsel's actions.  However, it
is likely that even if Plaintiff brought the claim within the
limitations period, Defendants would still be involved.
Therefore, this prejudice also did not arise from Plaintiff's
alleged delay.

[6] Plaintiff incorrectly cites this section of the statute in
his complaint as 50 U.S.C. § 521.  To clarify, this provision
was formally cited as 50 App. U.S.C § 521 and is now 50 U.S.C. §
3931.

[7] In his Opposition, Plaintiff states that all provisions in
SCRA apply to this lawsuit, while his complaint only cites one
statute.  For the reasons discussed herein, the Court cannot
(continued . . . )

<u>inter alia</u>, requirements for affidavits in court filings, appointing an attorney to represent defendant in military service, and penalties for making or using a false affidavit. <u>Id.</u>

On its face, this statute does not apply to the facts alleged in Plaintiff's complaint, which only mentions a non-judicial foreclosure and contains no mention whatsoever of a civil action or proceeding.[8]  The statute's legislative history also does not indicate that the statute was intended to cover non-judicial foreclosures.  In fact, another section of the SCRA, 50 U.S.C. § 3953, which is discussed herein, appears to cover non-judicial foreclosures.

Although no other court has addressed the issue, the Hawaii Supreme Court stated that non-judicial foreclosure is a private enforcement remedy and not an action in law or suit in equity.  <u>See</u> <u>Mount v. Apao</u>, 139 Haw. 167, 176, 384 P.3d 1268,

---

consider violations of statutes raised for the first time on the instant motion.
    Plaintiff also discusses and attaches a letter from Wells Fargo regarding the SCRA.  The Court cannot go beyond the face of the pleadings on a Rule 12(c) motion and therefore declines to consider this letter.
    [8] The Court notes that the Affidavit was filed in the Land Court, State of Hawaii.  However, the Affidavit was merely filed in the Land Court for the purposes of recording the foreclosure and not in a civil action or proceeding.  Complaint, Exhibit E.  According to the parties, the Land Court refused to accept the deed from U.S. Bank.  At the Court's hearing, Defendants explained that the Land Court refused to accept the deed because of an error in the bank's full name.

1277 (2016) (discussing whether non-judicial foreclosure is a
"proceeding to enforce a mortgage" under a Hawaii State law).
The court further stated that a non-judicial foreclosure is a
"contractual self-help remedy and is not conducted under the
auspices of or supervised by any court or administrative
agency." Id.[9] Although Plaintiff's allegations in his
complaint—that the Affidavit falsely stated that Plaintiff was
not in the military—is admittedly substantiated by the
Affidavit's attachment showing that Plaintiff was in fact in the
military; this does not change the fact that Plaintiff has not
alleged a cause of action based on the SCRA for this alleged
wrongdoing.[10]

Defendants, seemingly in an attempt to ascertain whether
Plaintiff could make any claim under the SCRA, discuss a more
applicable provision of the statute to this case—50 U.S.C. §

_____

[9] The cases Plaintiff cites—In re Templehoff, 339 B.R. 49
(Bankr. S.D.N.Y. 2005), Sprinkle v. SB&C Ltd., 472 F. Supp. 2d
1235 (W.D. Wash. 2006)—do not apply because they involve
affidavits filed in court and not related to a non-judicial
foreclosure.  Plaintiff also cites In re Gibbs, 522 B.R. 282
(Bankr. D. Haw. 2014), which does not allege a violation under
the SCRA and therefore cannot apply here.
[10] Furthermore, Plaintiff's assertion in its Reply—that
Defendants have repeatedly recognized that this particular
matter is subject to the SCRA and that accordingly Plaintiff is
protected by the SCRA—is of no consequence.
    The Court is concerned, however, that concluding that a
non-judicial foreclosure is not a "civil action or proceeding"
covered by the SCRA appears to undermine the purpose that
Congress intended to provide those who serve our country in the
military.

3953.  This section is entitled "Mortgages and Trust Deeds" and "applies only to an obligation on real or personal property owned by a servicemember that . . . originated <u>before</u> the period of the servicemember's military service and for which the servicemember is still obligated . . . [and] is secured by a mortgage, trust deed, or other security in the nature of a mortgage."  50 U.S.C. § 3953 (emphasis added).  This section states, <u>inter alia</u>, that "[a] sale, foreclosure, or seizure of property for a breach of an obligation  . . . shall not be valid if made during one year after, the period of the servicemembers's military service . . ."  50 U.S.C. § 3953(c).

As Defendants point out, this section also would not apply here because Plaintiff obtained the mortgage when he was already in active service.  <u>See</u> Complaint ¶¶ 3, 11; <u>see also</u> <u>Williams v. U.S. Bank Nat. Assoc.</u>, No. ED CV12-00748-JLQ, 2013 WL 571844, at *5 (C.D. Cal. Feb. 13, 2013) (holding that plaintiff failed to state a claim for relief based on Section [3953] of the SCRA because plaintiff's loan obligations originated during her military service); <u>Coward v. JP Morgan</u> <u>Chase Bank, Nat. Ass'n</u>, No. 2:11-CV-03378-GEB-DAD, 2012 WL 2263359, at *5 (E.D. Cal. June 15, 2012) (holding that the SCRA only applies to contracts entered into before military service).  Starting on November 3, 1995, Plaintiff was on "Active Duty Status" in the U.S. Army.  Complaint ¶¶ 3, 11.  Therefore, this

section does not apply to Plaintiff because he purchased the Property in 2005 when he was in active duty.

Plaintiff also argues in his Opposition that 50 U.S.C. § 3912(b), as opposed to 50 U.S.C. § 3953, applies to determine the scope of the SCRA. The Court disagrees. This section states, "This chapter applies to any judicial or administrative proceeding commenced in any court or agency in any jurisdiction subject to this chapter. This chapter does not apply to criminal proceedings." 50 U.S.C. § 3912(b). This section is listed within a subchapter titled "General Provisions" and comes immediately after the "Definitions" section of the chapter. This section merely describes when the SCRA applies more generally, such as which courts have jurisdiction to enforce the statute. Because this provision regards the application of the SCRA generally, the Court finds that this section does not apply here. Therefore, Plaintiff fails to plead a cognizable UDAP claim based on 50 U.S.C. § 3931.

In his Opposition, Plaintiff claims that all sections of the SCRA apply, even though his complaint only cites one section. The Court declines to consider whether every other section of the SCRA applies. See Schneider v. Calif. Dep't of Corrections, 151 F.3d 1194, 1197 n. 1 (9th Cir. 1998) (stating that "new allegations contained in the [plaintiff's] opposition motion, however, are irrelevant for Rule 12(b)(6) purposes"

(internal quotation marks omitted)); <u>Elizabeth Retail Props. LLC</u> <u>v. KeyBank Nat. Ass'n</u>, 83 F. Supp. 3d 972, 991 n.10 (D. Or. 2015) (declining to address a claim that was not pled in Plaintiff's complaint when deciding defendant's motion to dismiss); <u>Allfrey v. Mabus</u>, 770 F. Supp. 2d 1128, 1137 (W.D. Wash. 2011) ("The Court need not address this claim since it was not pled in Plaintiffs' complaint."); <u>Boggs v. Wells Fargo Bank</u> <u>NA</u>, No. C 11-2346 SBA, 2011 WL 5038432, at *4 (N.D. Cal. Oct. 24, 2011) ("Since this claim is not pled in the Complaint, it is not properly before the Court."). Therefore, Plaintiff has not adequately pled a claim under the SCRA.

### c. Whether Count II is Insufficiently Pled to the Extent it is Based on the 2015 Communications or Any Other Conduct

Defendants argue that to the extent Count II raises a UDAP claim based on communications alleged to have occurred in 2015, the claim should be dismissed as insufficiently pled. Defendants note that Count II of Plaintiff's Complaint does not discuss the 2015 communications whatsoever but lists sections of Haw. Rev. Stat.—specifically sections 480D-1, et seq. and 443B-1, et seq.—which govern collection practices and agencies. Plaintiff argues in his Opposition that the 2015 communications improperly conflicted with the affidavit stating that the loan was satisfied and released and therefore created a UDAP

violation.[11]  Plaintiff cannot merely list statutes in his

Complaint without alleging specific facts to satisfy each

element of the identified statute.  Monreal v. GMAC Mortg., LLC,

948 F. Supp. 2d 1069, 1076 (S.D. Cal. 2013) ("[M]erely listing

statutes without articulating specific facts to satisfy each

element of the identified statute is insufficient.").

In addition, the only way Plaintiff's Count II claim

can be predicated on the 2015 communications is if

"incorporation by reference" of the allegations contained

elsewhere in the Complaint suffices to state a claim.  See

Complaint ¶ 57 ("Plaintiff reallges and incorporates paragraphs

1 through 56 of this Complaint.").  However, courts have

generally rejected this practice, commonly known as shotgun or

puzzle pleading.  See, e.g., In re Intuitive Surgical Sec.

Litig., 65 F. Supp. 3d 821, 831 (N.D. Cal. 2014) (stating that

puzzle pleading—"a complaint that forces the defendants or court

to sort out the alleged statements and match them with the

corresponding adverse facts to solve the puzzle of interpreting

Plaintiff's claims"—abuses Rule 8's principles); Schwartz v.

Bank of Am., N.A., No. CV 12-00525 KSC, 2013 WL 12132070, at *3

(D. Haw. Jan. 7, 2013) ("Plaintiff contends that she has

---

[11] As previously discussed, the Court will not address new
allegations contained in Plaintiff's Opposition but not in his
Complaint.

sufficiently stated a claim because she incorporates by reference the factual allegations in the Complaint. Such a practice . . . is not permitted insofar as it violates FRCP 8's requirement of a short and plain statement and interferes with the court's ability to administer justice." (internal quotation marks omitted)); Dowkin v. Honolulu Police Dep't, No. CIV. 10-00087 SOM, 2012 WL 3012643, at *6 (D. Haw. July 23, 2012) (stating that a claim must provide notice of "what wrongdoing is being complained about" and must not "invite Defendants and the court to match allegations to claims, as if a complaint is a puzzle to be solved").

This is particularly true where the claim alleges deception, which requires a heightened pleading standard under Rule 9(b). See Fosbre v. Las Vegas Sands Corp., No. 2:10-CV-00765-KJD, 2012 WL 2848057, at *3 (D. Nev. July 11, 2012) (stating that the Rule 9(b) standard is not met by shotgun or puzzle pleadings); S.E.C. v. Fraser, No. CV-09-00443-PHX-GMSC, 2009 WL 2450508, at *14 (D. Ariz. Aug. 11, 2009) (same); In re Metro. Sec. Litig., 532 F.Supp.2d 1260, 1279 (E.D. Wash. 2007) (same). Even though Plaintiff incorporated all of the preceding paragraphs by reference, he never set forth the factual basis for his claim, a specific cause of action, or the elements of such claim based on the 2015 communications. Therefore, the

Court declines to consider a UDAP claim based on the 2015 communications because none has been adequately pled.[12]

In their Reply, Defendants also request that the Court enter judgment in their favor on Count II because Plaintiff fails to state a plausible UDAP claim.[13] When considering a Rule 12(c) motion, "the court may dismiss an insufficiently pled claim instead of granting judgment on it." Gagnon v. Nevada ex rel. Dep't of Pub. Safety, No. 2:13-CV-00528-JAD, 2015 WL 5062382, at *3 (D. Nev. Aug. 25, 2015); see Bobo v. City of Stockton, No. 2:09-753 WBS KJN, 2010 WL 3448550, at *2 (E.D.

_____

[12] Defendants, seemingly in an attempt to determine what section under Chapter 480 could apply if the Court were to determine that such a claim had been pled, argue that even if Plaintiff has alleged a claim based on the 2015 communications, they cannot do so under Section 480 as a matter of law. Defendants discuss Haw. Rev. Stat. § 480-13(b), which creates a cause of action for violations of Haw. Rev. Stat. § 480-2, a statute that Plaintiff cites in his complaint. Under § 480-13(b), in addition to alleging the unfair and deceptive practices, the Plaintiff must also allege injury and damage. Defendants argue that Plaintiff has failed to adequately plead injury or damages arising out of the 2015 letters. Plaintiff, on the other hand, argues that he alleged damages in the complaint. Because this Court holds that Plaintiff has not pled a UDAP claim based on the 2015 communications, the Court declines to discuss these arguments.

[13] The Ninth Circuit has held that a "district court need not consider arguments raised for the first time in a reply brief." Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007); see also Alaska Ctr. For Env't v. U.S. Forest Serv., 189 F.3d 851, 858 n. 4 (9th Cir. 1999) ("Arguments not raised in opening brief are waived."). However, a court has discretion to decide whether or not it will consider such arguments. Lane v. Dep't of Interior, 523 F.3d 1128, 1140 (9th Cir. 2008) (citing Glenn K. Jackson, Inc. v. Roe, 273 F.3d 1192, 1201-02 (9th Cir. 2001)).

Cal. Sept. 1, 2010); <u>Carmen v. San Francisco Unified Sch. Dist.</u>,

982 F. Supp. 1396, 1401 (N.D. Cal. 1997). Apart from the claim

relating to the 2005 mortgage transaction,[14] the only allegations

remaining involve generalized assertions and listing statutes.[15]

Plaintiff does not allege a specific cause of action, discuss

elements of a claim, or connect the elements of a claim to facts

pled. As previously discussed, this is inadequate, particularly

given the heightened pleading standards required under Rule

9(b). The Court, therefore, grants Defendants' motion without

prejudice.[16]

        In sum, Plaintiff's UDAP claim is not time-barred.

The Court, however, grants Defendants' motion and dismisses

Count II of Plaintiff's complaint without prejudice because it

---

[14] Plaintiff's UDAP claim regarding the 2005 mortgage
transaction alleged violations of Haw. Rev. Stat. §§ 480-2, 12,
whereas his claim regarding the 2010 Affidavit merely alleges a
violation of Haw. Rev. Stat. Chapter 480 generally.

[15] Defendants argue that a higher pleading standard under
Rule 9(b) applies because Plaintiff asserts in his Motion for
Partial Summary Judgment that his UDAP claim only involves
deceptive conduct. To the extent the Complaint pleads deceptive
conduct, the Court finds that a heightened standard applies.
<u>See</u> <u>Smallwood v. NCsoft Corp.</u>, 730 F. Supp. 2d 1213, 1232-33 (D.
Haw. 2010) (Kay, J.) (holding that claims for unfair and
deceptive practices under the Hawaii UDAP statute were subject
to the federal particularity requirements for pleading fraud).

[16] In his Opposition, Plaintiff asks the Court to declare
that he owns his home free and clear without further obligation
of payment. Because Plaintiff has not moved for judgment on the
pleadings on this issue and the Court dismisses Plaintiff's
Count II claim, the Court declines to decide this issue on the
instant motion.

was not adequately pled.  See Ashcroft v. Iqbal, 556 U.S. 662, 680-81 (2009).  Plaintiff is allowed leave to amend Count II of his Complaint based on the deficiencies discussed herein.

## II.  Plaintiff's Motion for Partial Summary Judgment

In his Motion, Plaintiff argues that he is entitled to summary judgment on all of his claims: (1) violation of the FDCPA; (2) violation of UDAP statutes; (3) negligent misrepresentation; and (4) negligence.  The Court discusses each of these claims in turn.

### a. FDCPA Claim

In order for the Court to grant summary judgment on Plaintiff's FDCPA claim, Plaintiff must show that there is no genuine issue of material fact regarding each element of the claim.  There are four elements of a FDCPA cause of action: (1) the plaintiff is a "consumer" under 15 U.S.C. § 1692a(3); (2) the debt arises out of a transaction entered into for personal purposes; (3) the defendant is a "debt collector" under 15 U.S.C. § 1692a(6); and (4) the defendant violated one of the provisions contained in 15 U.S.C. §§ 1692a–1692o.  See Minichino v. Piilani Homeowners Ass'n, Civ. No. 16-00461 DKW-RLP, 2016 WL 5796799, at *4 (D. Haw. Sept. 30, 2016).  Neither party disputes

that Plaintiff is a consumer.[17]  The Court, therefore, must

address whether Plaintiff has established that there is no issue

of material fact for the remaining three elements of his FDCPA

claim.

### i.  Whether Plaintiff Establishes that the Loan was a Personal Debt

Under the FDCPA, "debt" includes "any obligation . . .

arising out of a transaction" where the subject of the

transaction is "primarily for personal, family, or household

purposes."  15 U.S.C. § 1692a(5); see also Slenk v. Transworld

Sys., Inc., 236 F.3d 1072, 1075 (9th Cir. 2004) (stating that

the FDCPA applies to consumer debts and not business loans).

When classifying a loan, courts examine the transaction as a

whole and pay "particular attention to 'the purpose for which

the credit was extended in order to determine whether [the]

transaction was primarily consumer or commercial in nature.'"

Slenk, 236 F.3d at 1075 (quoting Bloom v. I.C. System, Inc., 972

F.2d 1067, 1068 (9th Cir. 1992)).

Further, in making this determination, courts "have

elevated substance over form," Slenk, 236 F.3d at 1275, and have

found that "[n]either the lender's motives nor the fashion in

which the loan is memorialized are dispositive of this inquiry."

---

[17] Plaintiff is a "consumer" because he is a "natural person obligated or allegedly obligated to pay any debt."  15 U.S.C. § 1692a(3).

<u>Bloom</u>, 972 F.2d at 1068. Therefore, courts "'look to the substance of the transaction and the borrower's purpose in obtaining the loan, rather than the form alone.'" <u>Slenk</u>, 236 F.3d at 1275 (quoting <u>Riviere, et al. v. Banner Chevrolet, Inc.</u>, 184 F.3d 457, 462 (5th Cir. 1999)). The relevant time period for determining the nature of a loan under the FDCPA is when the loan first arises, not when collection efforts begin. <u>Smith v. Progressive Fin. Servs., Inc.</u>, No. 6:12-cv-1704-MC, 2013 WL 3995004, at *1 (D. Or. Aug. 1, 2013). Subsequent use of the money, property, insurance, or services which are the subject of the transaction may be considered when evaluating the initial purpose of a consumer. <u>Id.</u> at *1 n.1.[18] The FDCPA does not

---

[18] Defendants mention that courts in this Circuit have looked at several factors to determine whether the loan is used primarily for commercial as opposed to personal purposes:

(1) The relationship of the borrower's primary occupation to the acquisition. The more closely related, the more likely it is to be business purpose.

(2) The degree to which the borrower will personally manage the acquisition. The more personal involvement there is, the more likely it is to be business purpose.

(3) The ratio of income from the acquisition to the total income of the borrower. The higher the ratio, the more likely it is to be business purpose.

(4) The size of the transaction. The larger the
(continued . . . )

require the debt be incurred exclusively for personal, family, or household purposes, but only primarily.  <u>Rust v. Bittner &</u> <u>Hahs, PC</u>, No. CV-11-3057-LRS, 2012 WL 1358506, at *3 (E.D. Wash. Apr. 19, 2012).

When examining the transaction as a whole, the Court finds that Plaintiff's loan primarily had a personal purpose and was used primarily as a personal residence.  In Plaintiff's Declaration, he states that he "entered into the transaction . .

---

transaction, the more likely it is to be business purpose.

(5)  The borrower's statement of purpose for the loan.

<u>Smith v. Progressive Fin. Servs., Inc.</u>, No. 6:12-cv-1704-MC, 2013 WL 3995004, at *2-3 (D. Or. Aug. 1, 2013); <u>Thompson v.</u> <u>Prof'l Foreclosure Corp.</u>, No. 98-CS-478, 2000 WL 34335866, at *4 (E.D. Wa. Sept. 25, 2005).

The Court notes that these factors originated in <u>Thorns v. Sundance Properties</u>, 726 F.2d 1417, 1419 (9th Cir. 1984), which involved interpreting a similar provision in the TILA.  These factors were then discussed in an FDCPA case, <u>Bloom</u> <u>v. I.C. System, Inc.</u>, 972 F.2d 1067 (9th Cir. 1992), because, as the Ninth Circuit acknowledged, few cases had interpreted the term "debt" under the FDCPA.  <u>Id.</u> at 1068.  The <u>Bloom</u> court, however, specifically left open the "question of whether the standards governing what constitutes a consumer debt under the FDCPA may differ from those determining what constitutes a consumer loan under the TILA."  <u>Id.</u> at 1069 n.2.

Other courts in the Ninth Circuit have not mentioned these specific factors when discussing whether a loan was used for personal or business purposes under the FDCPA and look to the totality of the circumstances.  <u>See, e.g.</u>, <u>Otomo v. Nevada</u> <u>Ass'n Servs., Inc.</u>, No. 2:10-CV-2199 JCM GWF, 2013 WL 1249598, at *8 (D. Nev. Mar. 25, 2013); <u>Rust v. Bittner & Hahs, PC</u>, No. CV-11-3057-LRS, 2012 WL 1358506, at *3 (E.D. Wash. Apr. 19, 2012).  In addition, since the factors do not impact the Court's ultimate finding, the Court does not specifically examine them here.

. for personal and household purposes; that is, to purchase my home." Pl.'s CSF in Supp., Chung Decl. ¶ 5.  Plaintiff testified that he wanted to buy property in Hawaii because he thought about retiring here.  See Defs.' CSF in Opp'n, Ex. 3 (Plaintiff's Depo.) at 84.  Plaintiff also testified that at the time he was negotiating to purchase the property, he intended to live in the property and rent the remaining three to four other bedrooms to tenants.  Defs.' CSF in Opp'n, Ex. 3 (Plaintiff's Depo.) at 89.  When Plaintiff was deployed to Iraq, he rented the property and had a property manager.  Defs.' CSF in Opp'n, Ex. 3 (Plaintiff's Depo.) at 112-13, 127.  However, there is no evidence that Plaintiff knew he would be deployed to Iraq when he purchased the property.

Plaintiff argues in his Reply that even though he rented his home, the court cannot construe this as a commercial purpose because most consumers' home is their largest investment and Plaintiff planned to live in the home during retirement.  In fact, Plaintiff lived in the Property for approximately two years before he left Hawaii to serve in Iraq.  Defs.' CSF in Opp'n, Ex. 3 (Plaintiff's Depo.) at 111.  Therefore, the Court finds that the loan was personal.[19]

---

[19] Although the parties have not presented and the Court is unaware of a case with the precise facts at issue, the Court finds that cases where courts have held that the debt was not

(continued . . . )

## ii. Whether Ocwen is a "Debt Collector"

A defendant to an FDCPA claim must be a "debt collector" within the statute. <u>Heintz v. Jackson</u>, 514 U.S. 291, 294 (1995). Under 15 U.S.C. § 1692a(6), "debt collector" means:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another . . . The term does not include--
>
> . . . .
>
> (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it

consumer in nature are clearly distinguishable. <u>See, e.g.</u>, <u>Kitamura v. AOAO of Lihue Townhouse</u>, No. CIV. 12-00353 LEK, 2013 WL 1398058, at *5 (D. Haw. Mar. 29, 2013) ("[T]he evidence shows that the property was not used primarily for personal, family, or household purposes. Plaintiffs did not use the property as a primary residence, but intended for the property's rental income to provide a source of funding for personal expenses."); <u>Johnson v. Wells Fargo Home Mortg., Inc.</u>, No. 3:05-CV-0321-RAM, 2007 WL 3226153, at *9 (D. Nev. Oct. 29, 2007) (holding that loans that were used to acquire residential investment properties to collect rental payments were not a "debt" under the FDCPA because Plaintiff did not use the properties "for his personal residence or for any other personal, family or household purpose" and "Plaintiff cites to no authority supporting the proposition that obtaining rental properties, which he does not occupy, but merely uses to collect rental payments, is still consumer in nature because he uses the properties for retirement planning").

was obtained by such person; or (iv)
concerns a debt obtained by such person as a
secured party in a commercial credit
transaction involving the creditor.

In interpreting this definition, courts have
consistently held that the FDCPA does not apply to mortgage
servicing companies, or assignees of the mortgage debt, if the
debt was not in default at the time the debt was obtained.  See,
e.g., Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir.
1985) ("The legislative history of section 1692a(6) indicates
conclusively that a debt collector does not include the
consumer's creditors, a mortgage servicing company, or an
assignee of a debt, as long as the debt was not in default at
the time it was assigned."); Soriano v. Wells Fargo Bank, N.A.,
2012 WL 1536065, at *8 (D. Haw. Apr. 30, 2012) ("[The] Wells
Fargo Defendants are not 'debt collectors' under the FDCPA if
they were loan servicers that were servicing the loans before
they went into default and thereafter sought to collect the
debt."); Fed. Nat'l Mortg. Ass'n v. Kamakau, 2012 WL 622169, at
*8 (D. Haw. Feb. 23, 2012) (stating that "original lenders,
creditors, mortgage servicing companies, and mortgage brokers
generally do not qualify as 'debt collectors' [under the
FDCPA]").

An entity that did not originate the debt but acquired
it and attempts to collect it is "either a creditor or a debt

collector depending on the default status of the debt at the time it was acquired." Perez v. Ocwen Loan Servicing, LLC, 2:15-cv-1708 MCE KJN PS, 2015 WL 9286554, at *2 (E.D. Cal. Dec. 21, 2015). "The same is true of a loan servicer, which can either stand in the shoes of a creditor or become a debt collector, depending on whether the debt was assigned for servicing before the default . . . occurred." Id.; see also Justice v. Ocwen Loan Servicing, LLC, No. 2:13-CV-00165, 2014 WL 526143, at *4 (S.D. Ohio Feb. 7, 2014) ("In other words, if Ocwen acquired the servicing for the Loans before they were in default, then it is not a debt collector under the FDCPA. But if Ocwen acquired the servicing for the Loans after they were in default, it is a debt collector under the FDCPA."); Amini v. Bank of Am. Corp., No. C11-0974RSL, 2013 WL 1898211, at *4 (W.D. Wash. May 6, 2013) (a mortgage servicer is a "'debt collector' if the debt was in default when it took over the servicing obligations," even if the ownership of the loan remains with the original lender).

When a defendant company acquires a debt through its merger with another creditor or loan servicer, rather than through a specific assignment, the debt is not considered to have been acquired after the default and the subsequent creditor or servicer is not deemed a "debt collector" under the FDCPA. See Brown v. Morris, 243 F. App'x 31, 34-35 (5th Cir. 2007)

43

("ABN AMRO . . . was not specifically assigned Brown's mortgage for debt-collection purposes.  Rather, ABN AMRO acquired it through [a] merger . . . Accordingly, ABN AMRO did <u>not</u> 'obtain' [the] mortgage while it was in default and . . . therefore [was] not an FDCPA debt collector."); <u>Esquivel v. Bank of Am., N.A.</u>, No. 2:12-CV-02502-GEB, 2013 WL 682925, at *2 (E.D. Cal. Feb. 21, 2013) ("[S]ince Bank of America, N.A. 'obtained' the debt when its predecessor in interest, BAC Home Loans Servicing, LP, obtained the debt, neither Defendant is a 'debt collector' under the FDCPA."); <u>Fenello v. Bank of Am., N.A.</u>, 926 F. Supp. 2d 1342, 1350-51 (N.D. Ga. 2013) (holding that a loan servicer defendant was not a debt collector under the FDCPA because it acquired the right to service the loan through a merger with a company who serviced the loan prior to default).[20]

Plaintiff states that Ocwen is a "debt collector" under the FDCPA because: (1) Ocwen stated that the purpose of its business, in part, is debt collection in its business registration (Pl.'s CSF in Supp., Ex. N); (2) Ocwen said that it was a debt collector in letters to Plaintiff (Pl.'s CSF in Supp., Ex. G, H, I, L, M); and (3) Ocwen has filed numerous

---

[20] "[C]ourts reason that in a merger . . . a successor corporation stands in the shoes of the disappearing corporation in every aspect and assumes all the debts and liabilities of the disappearing corporation as if it incurred those liabilities itself." <u>Beard v. Ocwen Loan Servicing, LLC</u>, No. 1:14-CV-1162, 2015 WL 5707072, at *3 (M.D. Pa. Sept. 24, 2015).

collection actions in Hawaii.  Pl.'s CSF in Supp., Ex. Q.

Although these documents demonstrate that Ocwen was regularly

involved in debt collection activities, they do not address the

crucial issue here—whether the debt was in default at the time

it was obtained or whether Defendant Ocwen was a debt collector

with respect to the subject debt.[21]

     To show factual support for this issue Plaintiff

discusses, <u>inter alia</u>, (1) a letter from HomeEq which states

that the loan was in default in March 2009 (Pl.'s CSF in Supp.,

Ex. C); (2) the mortgage assignment documents that assigned the

---

[21] Plaintiff cites two cases where the court, in part, based
its decision on the fact that the company stated that it was a
debt collector—<u>Reese v. Ellis, Painter, Ratteree & Adams, LLP</u>,
678 F.3d 1211 (11th Cir. 2012) and <u>Maynard v. Cannon</u>, 401 F.
App'x. 389 (10th Cir. 2010).
     <u>Reese</u> involved a motion to dismiss, where the court found
that plaintiff had sufficiently pled that defendant was a debt
collector because plaintiff alleged that defendant sent more
than 500 people letters saying that it was a debt collector.
678 F.3d at 1218.  Although the letters Ocwen sent to Plaintiff
identify that it was a debt collector, the sufficiency of the
pleadings is not at issue here because this case is on a motion
for summary judgment.
     In <u>Maynard</u>, the court held that defendant was a debt
collector because it admitted that it was a debt collector for
the purposes of the case in its answer to the complaint and
defendant testified in its deposition that the firm only works
on debt collections and foreclosures.  401 F. App'x. at 393.
Here, however, Ocwen never admitted in its Answer that it was a
debt collector under the FDCPA for the specific loan at issue in
this case, and Ocwen is not only a debt collector but also
involved in other services.  <u>See</u> Pl.'s CSF in Supp., Ex. N.
Furthermore, neither case discusses whether a loan servicer who
obtains the serving rights through a merger post-default is a
debt collector, which is at issue here.  Therefore, these cases
are inapposite.

mortgage to U.S. Bank in March 2010 (Pl.'s CSF in Supp., Ex. D); and (3) a delinquency notice sent from Ocwen to Plaintiff stating that the debt was in default on March 2, 2009. Pl.'s CSF in Supp., Ex. G. These documents establish that HomEq was servicing the loan on the date of default and therefore Ocwen obtained the debt after the default. In fact, Defendants agree that Ocwen started servicing the loan after the default. <u>See</u> Defs.' CSF in Opp'n, Additional Material Facts at 11. Therefore, Plaintiff has established that Ocwen is a debt collector.

Defendants, however, argue that Ocwen acquired the servicing rights to the debt through a <u>de facto</u> merger with HomEq, the predecessor servicer, and therefore was not a servicer to whom the servicing rights were assigned after Plaintiff had already defaulted on the loan. Although it is undisputed that there was no legal merger between Ocwen and HomEq, Defendants argue that because Ocwen acquired the debt from HomEq through the purchase of HomEq's assets from Barclays, there was a <u>de facto</u> merger.

Under the <u>de facto</u> merger doctrine, even when a transaction does not meet the statutory requirements for a merger, courts may treat it as a statutory merger if it has the economic effect of a statutory merger but is in the form of an acquisition or sale of assets and liabilities. <u>Graphics Indus.,</u>

_Inc. v. Indep. Agent Ctr., Inc._, 775 F.2d 38, 42 (2d Cir. 1985).
However, the parties have not found and the Court is unaware of
any case where the court addressed whether a _de facto_ merger
could be treated as a legal merger in the FDCPA context, even
though it would appear that a _de facto_ merger would be treated
the same as a legal merger under the FDCPA.

To demonstrate the alleged _de facto_ merger, Defendants
proffer two pieces of evidence: (1) the Declaration of Kevin
Flannigan from Ocwen who stated that Ocwen entered an Asset
Purchase Agreement ("Agreement") with two Barclays entities
(Defs.' CSF in Opp'n, Flannigan Decl. ¶ 6-7); and (2) the
Agreement. Defs.' CSF in Opp'n, Ex. 1.[22]  The Court finds the
Flannigan Declaration insufficient to create an issue of fact
because it is conclusory. See _Beard v. Ocwen Loan Servicing,_
_LLC_, No. 1:14-CV-1162, 2015 WL 5707072, at *4 (M.D. Pa. Sept.
24, 2015) (holding that Ocwen's affidavit merely stating that
Ocwen acquired the loan through a merger between the prior
servicing agent's parent company and Ocwen's subsidiary was
insufficient to create a genuine issue of fact).

The Court also finds that the Agreement is
insufficient to meet Defendants' burden. The Agreement is among

---

[22] Defendants filed a full version of the Agreement, upon
the Court's instruction at the hearing. ECF No. 76. Plaintiff
then responded to the full document. ECF No. 78.

Barclays Bank PLC, Barclays Capital Real Estate Inc., and Ocwen Loan Servicing, LLC, on the one hand, and Ocwen Financial Service Corporation, on the other. Defs.' CSF in Opp'n, Ex. 1 at 1. Defendants have not explained the mortgage's chain of title between these entities. In addition, although at the hearing Defendants stated that Barclays was "doing business as" HomEq, the agreement does not mention HomEq whatsoever.

Furthermore, whether a transaction is a de facto merger is typically a question of state law. See IHFC Properties, LLC v. APA Mktg., Inc., No. 1:10CV568, 2014 WL 197801, at *12 (M.D.N.C. Jan. 14, 2014); Planet Payment, Inc. v. Nova Info. Sys., Inc., No. 07-CV-2520 CBA RML, 2011 WL 1636921, at *6 (E.D.N.Y. Mar. 31, 2011). The entities in the transaction have different citizenships (England and Wales, Delaware, and Florida), id. at 1, and the agreement is governed under New York law. Id. at 98. Defendants have not discussed what jurisdiction's de facto merger rules apply, and therefore have not met their burden to show that the characteristics for a de facto merger have been met.

Finally, Ocwen did not assume all of HomEq's assets and liabilities under the Agreement. Particularly, Section 2.02(b) lists those liabilities that the sellers retained under the agreement, including liabilities arising from any breach of default by the sellers or of any provision of any servicing

agreement.  Id. at 32-33.  Although Defendants have not properly
stated which state's de facto merger rules apply, the Court
notes that assumption of assets and liabilities is a key factor
in determining the existence of a de facto merger.  See, e.g.,
Energy Intelligence Grp., Inc. v. Cowen & Co., LLC, No. 14 CIV.
3789 (NRB), 2016 WL 3939747, at *12 (S.D.N.Y. July 15, 2016)
(discussing Delaware law); Marenyi v. Packard Press Corp., No.
90 CIV. 4439 (CSH), 1994 WL 533275, at *3 (S.D.N.Y. Sept. 30,
1994) (discussing New York law).  Accordingly, the Court finds
that Defendants have not met their burden to show that Defendant
Ocwen stood in the shoes of the original mortgage service
company and finds summary judgment in favor of Plaintiff on this
issue.

### iii. Whether Defendants Violated the FDCPA

Plaintiff moves for summary judgment on six different
violations of the FDCPA.  The Court discusses each of the
alleged violations in turn.

#### 1.    Whether Defendants Violated the FDCPA When they Demanded Different Amounts Owed on the Same Date

Plaintiff asserts that Defendants violated 15 U.S.C. §
1692e(2)(A), which states:

> A debt collector may not use any false,
> deceptive, or misleading representation or
> means in connection with the collection of
> any debt.  Without limiting the general
> application of the foregoing, the following

49

> conduct is a violation of this section . . .
> (2) The false representation of--(A) the
> character, amount, or legal status of any
> debt.

A misstatement of a debt need not be knowing or intentional to
create liability under this section.  Clark v. Capital Credit &
Collection Servs., Inc., 460 F.3d 1162, 1176 (9th Cir. 2006).

To determine whether a debt collection practice is
false, deceptive, or misleading, it must be viewed objectively
from the perspective of the "least sophisticated debtor."  See
Gonzales v. Arrow Fin. Servs., LLC, 660 F.3d 1055, 1062 (9th
Cir. 2011).  The least sophisticated debtor standard is "lower
than simply examining whether particular language would deceive
or mislead a reasonable debtor."  Swanson v. Southern Oregon
Credit Serv. Inc., 869 F.2d 1222, 1227 (9th Cir. 1988).
However, the least sophisticated debtor standard retains the
concept of reasonableness so that a debt collector will not be
held liable for "'bizarre or idiosyncratic interpretations of
debt collection notices.'"  Goray v. Unifund CCR Partners, et
al., Civ. No. 06-00214 HG/LEK, 2007 WL 4260017, at *6 (D. Haw.
Dec. 4, 2007) (quoting Clomon v. Jackson, 988 F.2d 1314, 1319-20
(2d Cir. 1993)).

Plaintiff states that Defendants made false
representations to Plaintiff by stating that differing amounts
were due on the same date.  A July 16, 2015 delinquency notice

letter from Ocwen to Plaintiff stated that the total amount due

on the loan was $220,903.86, see Pl.'s CSF in Supp., Ex. G,

whereas a mortgage account statement also dated July 16, 2015

says that the total amount due as of the same date is

$216,997.12.  Pl.'s CSF in Supp., Ex. H.  These amounts differ

by $3,906.74.  However, the delinquency notice also states in

bold and underlined font that the total amount includes the next

month's regular monthly payment.  Pl.'s CSF in Supp., Ex. G.  In

addition, the notice states that the amount "may not include all

fees and charges, as all fees and charges may not have been

billed or posted to your account as of the letter date.  Please

contact us for your current reinstatement amount or payoff

amount."  Id.

        On the other hand, the mortgage account statement

states that the payment date is August 1, 2015 and that the

amount due on that date is $216,997.12.  Pl.'s CSF in Supp., Ex.

H.  The delinquency notice letter, therefore, includes an

additional month's payment, and the amounts between the two

notices are seemingly supposed to be different.[23]  Because

Plaintiff has not shown that either of the amounts are false but

---

[23] Contrary to Defendants' argument, however, the Court
notes that the delinquency notice's statement that the amount
may not include all fees and charges would actually increase the
amount due on the loan to be even higher than the amount listed
in the mortgage account statement and create a larger
discrepancy between the two amounts.

merely that they are different, and Defendants have discussed a viable reason for the discrepancy, the Court recognizes that Plaintiff's theory that the account statements showing two different amounts were misleading was not enough to meet his burden on summary judgment. However, the Court finds that these documents would be misleading to the least sophisticated consumer when contrasted with the Affidavit stating that the loan was satisfied and thus violated the FDCPA as a matter of law.

### 2. Whether Defendants' Alleged "Gamesmanship" in the Instant Litigation Violated the FDCPA

Plaintiff argues that Ocwen's counterclaim based on the alleged debt is misleading given (1) the Affidavit stating that the loan was fully released (Pl.'s CSF in Supp., Ex. E.); and (2) a response in Defendants' Answer that they do not know whether the debt remains outstanding. ECF No. 33-2 at 4. Plaintiff claims that these actions were violations of 15 U.S.C. § 1692e(2) and 15 U.S.C. § 1692g. This allegation was not pled in the Complaint, and Plaintiff has not sought leave to amend his complaint. The Complaint only alleges facts in the year prior to the action's filing and does not include any behavior in the litigation itself. Complaint ¶ 50. In addition, the

allegations in the Complaint regarding the 15 U.S.C. § 1692g violation only discuss a validation notice.[24]

The Court cannot address claims not pled in the complaint on a summary judgment motion. "Federal Rule of Civil Procedure 8(a)(2) requires that the allegations in the complaint 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Pickern v. Pier 1 Imports (U.S.), Inc., 457 F.3d 963, 968 (9th Cir. 2006) (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002)). Consistent with this requirement, "raising such claim in a summary judgment motion is insufficient to present the claim to the district court." Navajo Nation v. United States Forest Serv., 535 F.3d 1058, 1080 (9th Cir. 2008) (en banc). "'Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings.'" Wasco Prods., Inc. v. Southwall Techs., Inc., 435 F.3d 989, 992 (9th Cir. 2006) (quoting Fleming v. Lind-Waldock & Co., 922 F.2d 20, 24 (1st Cir. 1990)); see also Hasan v. E. Washington State Univ., 485 F. App'x 169, 171 (9th Cir. 2012) (holding that a claim not pled in plaintiff's

---

[24] Plaintiff has not moved for summary judgment on a claim related to a validation notice. (In his Complaint, Plaintiff alleged that Ocwen failed to send Plaintiff a proper validation notice. Under 15 U.S.C. § 1692g, Ocwen was required to communicate certain information to Plaintiff within five days after its initial communication with Plaintiff if its initial communication did not contain the required information).

complaint should be rejected at the summary judgment stage);

Feezor v. Patterson, 896 F. Supp. 2d 895, 903 (E.D. Cal. 2012)

("It is axiomatic that violations not pled in the complaint

cannot be considered by this court at the summary judgment

stage."). Therefore, Plaintiff cannot establish that summary

judgment is warranted on this violation.

### 3. Whether Defendants Violated the FDCPA for Sending Plaintiff Letters After They Knew He was Represented by an Attorney

Plaintiff asserts that Defendants violated 15 U.S.C. §

1692c(a)(2), which states:

> Without the prior consent of the consumer
> given directly to the debt collector or the
> express permission of a court of competent
> jurisdiction, a debt collector may not
> communicate with a consumer in connection
> with the collection of any debt . . . if the
> debt collector knows the consumer is
> represented by an attorney with respect to
> such debt and has knowledge of, or can
> readily ascertain, such attorney's name and
> address, unless the attorney fails to
> respond within a reasonable period of time
> to a communication from the debt collector
> or unless the attorney consents to direct
> communication with the consumer . . .

The term "communication" means the conveying of information

regarding a debt directly or indirectly to any person through

any medium. 15 U.S.C. § 1692a(2). There is no bright line test

to determine whether a communication involves the collection of

a debt. Preuher v. Seterus, LLC, No. 14 C 6140, 2014 WL

7005095, at *2 (N.D. Ill. Dec. 11, 2014). Instead, courts look

to several factors, including: whether there was a demand for payment, discussion of a deadline to pay, threats in the event of nonpayment, mention of the underlying debt or a balance due on the debt, and the purpose of the communications. See, e.g., Burns v. Seterus, Inc., No. 16-CV-06638, 2017 WL 104735, at *1-3 (W.D.N.Y. Jan. 11, 2017); Alhassid v. Nationstar Mortg. LLC, No. 1:16-CV-21211-KMM, 2016 WL 4269867, at *1-2 (S.D. Fla. Aug. 10, 2016); Preuher, 2014 WL 7005095, at *2; Shelley v. Ocwen Loan Servicing, LLC, No. 1:13-CV-506-RLY-DKL, 2013 WL 4584649, at *7 (S.D. Ind. Aug. 28, 2013).

Plaintiff states that Ocwen communicated directly with Plaintiff after it knew that he was represented by an attorney. Specifically, Plaintiff asserts an August 31, 2015 letter from Plaintiff's attorney to Ocwen notifying Ocwen of the representation, which shows that Defendants had notice of the representation. Pl.'s CSF in Supp., Ex. J. Plaintiff details two letters from Ocwen directly to Plaintiff on September 10, 2015 and September 17, 2015. Pl.'s CSF in Supp., Ex. L. The September 17, 2015 letter, an ombudsman acknowledgment, thanks Plaintiff for his recent loan inquiry regarding his loan and states that Ocwen is undergoing a review. Pl.'s CSF in Supp., Ex. L at 1. In the September 10, 2015 letter, Ocwen is seeking information regarding hazard insurance on the Property and notifying him that it plans to buy hazard insurance because

Plaintiff failed to purchase it as required under the mortgage agreement.  Pl.'s CSF in Supp., Ex. L at 2.

The ombudsman acknowledgment letter is not a prohibited communication under the FDCPA because it is not seeking to collect a debt.  The purpose of the letter was not to induce payment.  The letter does not even mention the status of Plaintiff's account.  Instead, it is merely informing Plaintiff about the status of his inquiry.  This communication is not prohibited under the FDCPA.  Cf. Shelley, 2013 WL 4584649, at *7 (holding that the letter was not a communication in connection with debt collection under the FDCPA because "on its face it was clearly informational—it alerts Plaintiffs that their account has been transferred to Ocwen and provides Ocwen's contact information.  The Letter did not demand a specific payment or discuss the delinquency of the underlying debt . . . [and] the terms of the payment are not even listed.").

The Court also finds that the hazard insurance letter does not violate the FDCPA because it is not seeking to collect a debt.  Courts have found that similar hazard insurance letters do not constitute a communication in the connection with the collection of a debt.  See, e.g., Burns, 2017 WL 104735, at *3; Alhassid, 2016 WL 4269867, at *2; McCamis v. Servis One, Inc., No. 8:16-CV-1130-T-30AEP, 2016 WL 4063403, at *3 (M.D. Fla. July 29, 2016); Preuher, 2014 WL 7005095, at *3.  The letter does not

demand payment, discuss a deadline to pay, mention the underlying debt, or discuss a balance due on the debt. The purpose of the letter was merely to inform Plaintiff that Ocwen would be purchasing hazard insurance for Plaintiff because Plaintiff had failed to provide hazard insurance as required under the mortgage agreement. Furthermore, under the Real Estate Settlement Procedures Act ("RESPA"), Defendant was required to provide notice before purchasing hazard insurance and billing it to Plaintiff. See 12 U.S.C. §§ 2605(k)(1)(a), (l)(1); 12 C.F.R. § 1024.37.

Plaintiff argues that the footer at the bottom of the letters stating—"This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose"—demonstrates that these letters were prohibited communications. Pl.'s CSF in Supp., Ex. L at 1, 4. However, this language alone is insufficient to make a communication prohibited. See LaCourse v. Ocwen Loan Servicing, LLC, No. 14-CV-013-LM, 2015 WL 1565250, at *9-10 (D.N.H. Apr. 7, 2015) (holding that Ocwen's letter to plaintiffs in response to plaintiffs' request for Ocwen to perform research regarding their loan was not a prohibited communication even though it had the notation, "This communication is from a debt collector attempting to collect a debt; any information obtained will be

used for that purpose."). Therefore, the Court denies summary judgment on this violation.

### 4. Whether Defendants Violated the FDCPA by Improperly Charging Late Fees, Insurance Charges, and Attorney's Fees

Plaintiff claims that Defendants "improperly charged late fees, insurance charges, and attorney's fees, which were, again, incorrect, confusing, and misleading" in violation of 15 U.S.C. § 1692e and 15 U.S.C. § 1692f. However, Plaintiff provides no analysis or supporting evidence for this claim in his Motion and only raises two specific matters for the first time in his Reply. Accordingly, the Court will not consider the same and denies Plaintiff's motion to this extent.

### 5. Whether Defendants Violated the FDCPA by Reporting False Credit Information

Plaintiff asserts that Ocwen violated 15 U.S.C. § 1692e(8), which prohibits "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false . . ." To support this allegation, Plaintiff states that his account was reported to the credit bureau in June 30, 2011 and August 31, 2015, both showing a last payment on February 1, 2009 and showing an unpaid balance of $415,601.00 with a monthly payment of $2,498. Pl.'s CSF in Supp., Ex. R. Plaintiff also discusses the Affidavit which says that the loan was satisfied. Pl.'s CSF in Supp., Ex.

E.  Therefore, Ocwen knew or should have known that the
information reported to the credit bureaus was false.
Accordingly, the Court grants summary judgment in favor of
Plaintiff for this violation.

### 6. Whether Defendants Violated the FDCPA by Attempting to Collect on the Alleged Debt, Even Though They Knew it was Time-Barred

Plaintiff asserts that Defendants violated the FCDPA
by attempting to collect on the alleged debt, even though they
knew that the statute of limitations had run.[25]  Plaintiff
references Ocwen's demands, which started in July 2015.  Pl.'s
CSF in Supp., Ex. G.  Federal courts disagree about whether a
debt collector can be liable under the FDCPA for sending a
collection letter to a consumer for a time-barred debt.  In the
Third and Eighth Circuits, a collection letter is only
actionable if it is accompanied by a threat of litigation.  See
Huertas v. Galaxy Asset Mgmt., 641 F.3d 28, 32-33 (3d Cir. 2011)
("[T]he FDCPA permits a debt collector to  seek voluntary
repayment of the time-barred debt so long as the debt collector
does not initiate or threaten legal action in connection with
its debt collection efforts."); Freyermuth v. Credit Bureau
Servs., Inc., 248 F.3d 767, 771 (8th Cir. 2001) ("[I]n the

---

[25] At the hearing, both parties agreed that the debt was
subject to a six-year statute of limitations and therefore was
time-barred.

absence of a threat of litigation or actual litigation, no violation of the FDCPA has occurred when a debt collector attempts to collect on a potentially time-barred debt that is otherwise valid.").

In the Sixth and Seventh Circuits, however, a debt collector may be liable if the collection letter would mislead the least sophisticated debtor about the enforceability of the debt. See Buchanan v. Northland Group, Inc., 776 F.3d 393, 399-400 (6th Cir. 2015) (holding that a settlement offer by a debt collector with respect to a time-barred debt does by itself amount to a threat of litigation and may violate the FDCPA); McMahon v. LVNV Funding, LLC, 744 F.3d 1010, 1020 (7th Cir. 2014) ("The proposition that a debt collector violates the FDCPA when it misleads an unsophisticated consumer to believe a time-barred debt is legally enforceable, regardless of whether litigation is threatened, is straightforward under the statute.").[26]  The difference in the case law can, in part, be explained by a factual difference between the cases; in Buchanan and McMahon, the communication at issue offered to settle a debt.

---

[26] The Fifth Circuit has also agreed with the Sixth and Seventh Circuits.  See Daugherty v. Convergent Outsourcing, Inc., 836 F.3d 507, 511 (5th Cir. 2016).

The Ninth Circuit has not addressed this issue. However, two district court cases in the Ninth Circuit, both decided prior to the Seventh Circuit decision of McMahon, have required a threat of litigation for the letter seeking a time-barred debt to be actionable under the FDCPA. See Abels v. JBC Legal Grp., P.C., 428 F. Supp. 2d 1023, 1027-29 (N.D. Cal. 2005); Perretta v. Capital Acquisitions & Mgmt. Co., No. C-02-05561 RMW, 2003 WL 21383757, at *4 (N.D. Cal. May 5, 2003). One recent case in the Ninth Circuit has followed McMahon, holding that "the least sophisticated consumer could view an offer to settle as a veiled threat of litigation, or, at the least, as a misrepresentation that a debt is still enforceable." Finley v. Dynamic Recovery Sols. LLC, No. 14-CV-04028-TEH, 2015 WL 3750140, at *4-5 (N.D. Cal. June 15, 2015).

The delinquency notice and mortgage account statements do not discuss anything related to litigation or an "offer to settle." However, given McMahon's broad language regarding the collection of any time-barred debt, the Court follows McMahon and its progeny. Because the communications attempted to collect on a time-barred debt, they violated the FDCPA as a matter of law. The Court further finds that the collection letter implicitly indicates to a least sophisticated consumer that collection litigation would follow if the debt is not paid.

Accordingly, the Court grants summary judgment on this FDCPA claim.

### iv.  Whether the Bona Fide Error Defense Applies

The bona fide error defense is an affirmative defense pursuant to 15 U.S.C. § 1692k(c) for which the debt collector has the burden of proof.  Fox v. Citicorp Credit Servs., Inc., 15 F.3d 1507, 1514 (9th Cir. 1994).  Defendants did not raise the bona fide error defense in their Answer or First Amended Answer to the Complaint and raise it for the first time in their Opposition.  ECF Nos. 13, 37.  An affirmative defense raised for the first time in opposition to summary judgment may be considered unless the plaintiff argues prejudice from the late assertion.  Paine v. City of Lompoc, 265 F.3d 975, 980 n.1 (9th Cir. 2001).  Plaintiff states that he has been prejudiced by this late assertion because he did not seek discovery on the issue.  Plaintiff's Reply at 7.  Therefore, the Court does not address whether the bona fide error defense applies.

In sum, the Court grants Plaintiff's motion for partial summary judgment as to the following FDCPA violations: (1) "claiming different amounts were owed on the same date" (the court finds that Defendants violated 15 U.S.C. § 1692e(2)(A) by sending Plaintiff collection letters despite the Affidavit stating that the debt had been released); (5) reporting false information to credit bureaus; and (6) attempting to collect on

a time-barred debt.  The Court denies Plaintiff's motion for

partial summary judgment as to Plaintiff's claims relating to

(2) Defendants' "gamesmanship" in the instant litigation; (3)

communicating with Plaintiff when Defendants knew he was

represented by an attorney; and (4) improperly charging late

fees, insurance charges, and attorney's fees.

### b. UDAP Claim

In light of the Court's decision that Plaintiff has

not stated a plausible UDAP claim, Plaintiff's motion for

summary judgment on this claim is denied.

In Plaintiff's motion for summary judgment, Plaintiff

asserts the following additional UDAP violations: (1)

foreclosing without notice; (2) disseminating false and

confusing credit information; (3) failing to properly respond to

a written request under the RESPA; and (4) representing in bad

faith that Defendants did not know that Plaintiff still owned

the property.[27]  None of these violations, however, were pled in

the Complaint.  As previously discussed, violations not pled in

the complaint cannot be decided on summary judgment.  Therefore,

---

[27] Plaintiff asserts that Defendants violated the SCRA when
they misrepresented Plaintiff's military status in the
Affidavit.  Pl.'s CSF in Supp., Ex. E.  As previously discussed,
based on the allegations in the Complaint, Plaintiff cannot
state a claim under the SCRA.  The Court, therefore, declines
Plaintiff's summary judgment motion on this claim.

because the Court cannot consider these claims, the Court denies

summary judgment as to these added claims.[28]

---

[28] The Court notes the following with respect to Plaintiff's
UDAP claim.  To determine whether a practice is deceptive under
Haw. Rev. Stat. Chapter 480, courts look to whether it is: (1) a
representation, omission, or practice that (2) is likely to
mislead consumers acting reasonably under the circumstances
where (3) the representation, omission, or practice is material.
Courbat v. Dahana Ranch, Inc., 111 Haw. 254, 262, 141 P.3d 427,
435 (2006).  "A representation, omission, or practice is
considered material if it involves information that is important
to consumers and, hence, likely to affect their choice of, or
conduct regarding, a product."  Id. (internal quotation marks
omitted).  The test is objective, turning on whether the act or
omission is likely to mislead consumers.  Id.  In addition,
Plaintiff must demonstrate that the violation caused private
damage.  Hungate v. Law Office of David B. Rosen, No. SCAP-13-
0005234, 2017 WL 747870, at *14 (Haw. Feb. 27, 2017).  However,
Haw. Rev. Stat. Chapter 480 precludes damages for personal
injury and emotional distress.  See Zanakis-Pico v. Cutter
Dodge, Inc., 98 Haw. 309, 319, 47 P.3d 1222, 1232 (2002);
Ailetcher v. Beneficial Fin. Co. of Hawaiʻi, 2 Haw. App. 301,
307, 632 P.2d 1071, 1076 (1981); Beerman v. Toro Mfg. Corp., 1
Haw. App. 111, 117, 615 P.2d 749, 754 (1980).
     Plaintiff has put forward no evidence supporting that he
has incurred damages but merely presents conclusory statements.
These unsupported statements are insufficient to meet his burden
on summary judgment.  See Hernandez v. Spacelabs Med. Inc., 343
F.3d 1107, 1112 (9th Cir. 2003) ("[A party] cannot defeat
summary judgment with allegations in the complaint, or with
unsupported conjecture or conclusory statements.").  Plaintiff
also does not make clear that the out of pocket damages that he
discusses were caused by the alleged violations.
     In addition, a RESPA violation is not a per se UDAP
violation.  See Au v. Republic State Mortg. Co., No. CIV. 11-
00251 JMS, 2012 WL 3113147, at *7 (D. Haw. July 31, 2012) ("[A]
viable § 480-2 cause of action does not necessarily follow from
violations of RESPA."); Stanton v. Bank of Am., N.A., 2010 WL
4176375, at *12 (D. Haw. Oct. 9, 2010) ("[T]he fact that . . .
an action is contrary to RESPA . . . does not constitute a per
se unfair business practice because RESPA and HRS § 480-2 have
differing scope and application.").  Plaintiff also does not
                                        (continued . . . )

64

### c. Negligence and Negligent Misrepresentation Claims

At the hearing, Plaintiff said that he was no longer pursuing the negligence and negligent misrepresentation claims in his summary judgment motion. The Court, therefore, does not consider whether Plaintiff has met his burden on summary judgment as to these claims.

### CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion for Judgment on the Pleadings on Count II of the Complaint. The Court DISMISSES Count II of the Complaint WITHOUT PREJUDICE. The Court GRANTS IN PART and DENIES IN PART Plaintiff's Motion for Partial Summary Judgment.

Specifically, the Court GRANTS summary judgment on Plaintiff's FDCPA claims related to: (1) "claiming different amounts were owed on the same date" (the court finds that Defendants violated 15 U.S.C. § 1692e(2)(A) by sending Plaintiff collection letters despite the Affidavit stating that the debt had been released); (5) reporting false information to credit bureaus; and (6) attempting to collect on a time-barred debt.

The Court DENIES summary judgment on Plaintiff's FDCPA claim related to (2) Defendants' "gamesmanship" in the instant litigation; (3) communicating with Plaintiff when Defendants

demonstrate how the Defendants' knowledge of the title problem was a UDAP violation.

knew he was represented by an attorney; and (4) improperly charging late fees, insurance charges, and attorney's fees.[29]

The Court DENIES summary judgment on Plaintiff's UDAP claims.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, April 17, 2017.



_____
Alan C. Kay
Sr. United States District Judge

Chung v. U.S. Bank, N.A., Civ. No. 16-00017 ACK-RLP, Order Granting Defendants' Motion for Judgment on the Pleadings on Count II of the Complaint and Granting in Part and Denying in Part Plaintiff's Motion for Partial Summary Judgment

---

[29] The Court notes that it issued a minute order advising the parties that the SCRA's tolling statute (50 U.S.C. § 3936) might be applicable with regard to Defendants' Motion for Judgment on the Pleadings on Count II.  The Court further notes that, as it found in its ruling, the tolling statute is applicable to Plaintiff's claims asserted in his Motion for Partial Summary Judgment.

Should Defendants feel that they have not had an opportunity to appropriately oppose Plaintiff's Motion for Partial Summary Judgment, given the Court's ruling that the SCRA's tolling statute applies, Defendants may file a motion for reconsideration with respect to that issue.  Any such motion should be filed within 14 days of the Court's order.  Plaintiff may have seven days after such motion is filed to respond.